**GIBSON, DUNN & CRUTCHER LLP**
THEODORE J. BOUTROUS JR., SBN 132099
   tboutrous@gibsondunn.com
RICHARD J. DOREN, SBN 124666
   rdoren@gibsondunn.com
DEBORAH L. STEIN, SBN 224570
   dstein@gibsondunn.com
333 South Grand Avenue
Los Angeles, CA 90071-3197
Tel.: 213.229.7000
Fac.: 213.229.7520

**ROBINSON & COLE LLP**
STEPHEN E. GOLDMAN (admitted *pro hac vice*)
   sgoldman@rc.com
WYSTAN M. ACKERMAN (admitted *pro hac vice*)
   wackerman@rc.com
280 Trumbull Street
Hartford, CT 06103
Tel.: 860.275.8200
Fac.: 860.275.8299

Attorneys for Defendant The Travelers
Indemnity Company of Connecticut

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| 10E, LLC, a limited liability company,<br><br>          Plaintiff,<br><br>   v.<br><br>THE TRAVELERS INDEMNITY COMPANY OF CONNECTICUT, a corporation; ERIC GARCETTI, an individual; and DOES 1 to 25, inclusive,<br><br>          Defendants. | **CASE NO. 2:20-cv-04418-SVW-AS**<br><br>**DEFENDANT THE TRAVELERS INDEMNITY COMPANY OF CONNECTICUT'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT**<br><br><u>**Hearing:**</u><br><br>Date:    August 31, 2020<br>Time:    1:30 p.m.<br>Place:    Courtroom 10A<br>          First Street Courthouse<br>          350 W. First Street<br>          Los Angeles, CA 90012<br>Judge:   Stephen V. Wilson |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**MEMORANDUM OF POINTS AND AUTHORITIES**

**TABLE OF CONTENTS**

Page

I.    INTRODUCTION ................................................................................ 1

II.   PROCEDURAL HISTORY AND ALLEGED FACTS ......................... 2

    A.    This Lawsuit ............................................................................... 2

    B.    Contract Language at Issue ........................................................ 4

        1.    The Relevant Coverage Provisions .................................. 4

        2.    The Virus Exclusion ........................................................ 5

III.  LEGAL STANDARD .......................................................................... 6

IV.   ARGUMENT ....................................................................................... 7

    A.    10E Is Not Entitled to Civil Authority Coverage ...................... 8

        1.    Civil Authority Coverage Does Not Apply to Losses Caused by or Resulting from a Virus ............................... 8

        2.    Civil Authority Coverage Does Not Apply Because the FAC Admits the Order Did Not "Prohibit Access" to 10E's Premises ................................................................ 11

    B.    Business Income and Extra Expense Coverage Does Not Apply as a Matter of Law ............................................................ 14

    C.    Dismissal of the First Cause of Action Is Proper Because 10E Is Not Entitled to Any of Its Requested Declarations ................. 16

    D.    Dismissal of the Second Cause of Action for Breach of Contract Is Proper Because 10E Has Not Alleged Any Breach ................. 17

    E.    Dismissal of the Third Cause of Action for Bad Faith Is Proper Because 10E Is Not Entitled to Coverage as a Matter of Law ............... 18

    F.    Dismissal of the Fourth Cause of Action for UCL Violations Is Proper Because 10E Pleads No Fraudulent, Unfair, or Unlawful Conduct ....................................................... 19

V.    CONCLUSION ................................................................................. 22

# TABLE OF AUTHORITIES

Page(s)

## Cases

*1231 Euclid Homeowners Ass'n v. State Farm Fire & Cas. Co.*,
    135 Cal. App. 4th 1008 (2006) ................................................................. 17

*54th St. Ltd. Partners, L.P. v. Fid. & Guar. Ins. Co.*,
    763 N.Y.S.2d 243 (N.Y. App. Div. 2003) ................................................ 13

*730 Bienville Partners, Ltd. v. Assurance Co. of Am.*,
    67 F. App'x 248 (5th Cir. 2003) .............................................................. 12

*Abner, Herrman & Brock, Inc. v. Great N. Ins. Co.*,
    308 F. Supp. 2d 331 (S.D.N.Y. Mar. 12, 2004) ...................................... 13

*Aleksick v. 7-Eleven, Inc.*,
    205 Cal. App. 4th 1176 (2012) ................................................................ 19

*Amaral v. Wachovia Mortg. Corp.*,
    692 F. Supp. 2d 1226 (E.D. Cal. 2010) ................................................... 17

*Atlas Assurance Co. v. McCombs Corp.*,
    146 Cal. App. 3d 135 (1983) ............................................................. 9, 10

*Backroads Corp. v. Great Northern Ins.*,
    No. C 03-4615 VRW, 2005 WL 1866397 (N.D. Cal. Aug. 1, 2005) ...................... 12

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ................................................................................. 6

*Boris v. Wal-Mart Stores, Inc.*,
    35 F. Supp. 3d 1163 (C.D. Cal. 2014), *aff'd*, 649 F. App'x 424 (9th
    Cir. 2016) ................................................................................................ 21

*Brown v. Mid-Century Ins. Co.*,
    215 Cal. App. 4th 841 (2013) .................................................................. 18

*By Dev., Inc. v. United Fire & Cas. Co.*,
    No. CIV. 04-5116, 2006 WL 694991 (D.S.D. Mar. 14, 2006), *aff'd*,
    206 F. App'x 609 (8th Cir. 2006) ............................................................ 13

### TABLE OF AUTHORITIES
*(continued)*

Page(s)

*Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*,
  637 F.3d 1047 (9th Cir. 2011) ........................................................... 7, 20, 22

*Camp Richardson Resort, Inc. v. Philadelphia Indem. Ins. Co.*,
  150 F. Supp. 3d 1186 (E.D. Cal. 2015) ........................................................ 3

*Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*,
  20 Cal. 4th 163 (1999) ........................................................................... 19, 21

*Certain Underwriters at Lloyd's London v. Creagh*,
  Civ. A. No. 12-571, 2013 WL 3213345 (E.D. Pa. June 26, 2013), *aff'd*,
  563 Fed. App'x 209 (3d Cir. 2014) ............................................................. 9

*Certain Underwriters at Lloyd's of London v. Superior Court*,
  24 Cal. 4th 945 (2001) ................................................................................ 7

*Clarke v. State Farm Fla. Ins.*,
  123 So. 3d 583 (Fla. Dist. Ct. App. 2012) ................................................. 10

*Commstop, Inc. v. Travelers Indem. Co. of Conn.*,
  No. cv-11-1257, 2012 WL 1883461 (W.D. La. May 12, 2012) ................. 13

*Cont'l Cas. Co. v. City of Richmond*,
  763 F.2d 1076 (9th Cir. 1985) .................................................................... 6

*Davidson v. Kimberly-Clark Corp.*,
  889 F.3d 956 (9th Cir. 2018) ................................................................... 7, 20

*Doe v. State Farm Fire & Cas. Co.*,
  No. 2015-0136, 2015 WL 11083311 (N.H. Sept. 21, 2015) ...................... 9

*Doyle v. Fireman's Fund Ins. Co.*,
  21 Cal. App. 5th 33 (2018), *review denied* (June 13, 2018) ................... 15

*Fireman's Fund Ins. Co. v. Superior Court*,
  65 Cal. App. 4th 1205 (1997) ..................................................................... 9

*Gardner v. Martino*,
  563 F.3d 981 (9th Cir. 2009) ..................................................................... 22

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Gibson, Dunn &
Crutcher LLP

Defendant The Travelers Indemnity Company of
Connecticut's Motion to Dismiss FAC
     iii     2:20-cv-04418-SVW-AS

# TABLE OF AUTHORITIES
*(continued)*

Page(s)

*Glenn K. Jackson Inc. v. Roe*,
 273 F.3d 1192 (9th Cir. 2001) ................................................................. 19

*Hackethal v. Nat'l Cas. Co.*,
 189 Cal. App. 3d 1102 (1987) .................................................................. 21

*Hadland v. NN Inv'rs Life Ins. Co.*,
 24 Cal. App. 4th 1578 (1994) ................................................................... 20

*Herr v. Forghani*,
 161 Wash. App. 1037 (2011) ................................................................... 16

*John Hancock Mut. Life Ins. Co. v. Cohen*,
 254 F.2d 417 (9th Cir. 1958) .................................................................... 20

*Kean, Miller, Hawthorne, D'Armond McCowan & Jarman, LLP v. Nat'l*
 *Fire Ins. Co. of Hartford*,
 No. CIV. A. 06-770-C, 2007 WL 2489711 (M.D. La. Aug. 29, 2007) .................. 13

*Khoury v. Maly's of Cal., Inc.*,
 14 Cal. App. 4th 612 (1993) ..................................................................... 22

*Knievel v. ESPN*,
 393 F.3d 1068 (9th Cir. 2005) .................................................................... 3

*Krantz v. BT Visual Images, LLC*,
 89 Cal. App. 4th 164 (2001) ..................................................................... 19

*Lambi v. Am. Family Mut. Ins. Co.*,
 498 F. App'x 655 (8th Cir. 2013) ................................................................ 9

*Lavie v. Procter & Gamble Co.*,
 105 Cal. App. 4th 496 (2003) ................................................................... 19

*Lazar v. Hertz Corp.*,
 69 Cal. App. 4th 1494 (1999) ................................................................... 22

*Lopez v. Smith*,
 203 F.3d 1122 (9th Cir. 2000) .................................................................... 6

**TABLE OF AUTHORITIES**
*(continued)*

Page(s)

*Love v. Fire Ins. Exch.*,
221 Cal. App. 3d 1136 (1990) .......................................................................... 17, 18

*Marzec v. California Pub. Employees Ret. Sys.*,
236 Cal. App. 4th 889 (2015) ............................................................................. 7, 10

*Meridian Textiles, Inc. v. Indem. Ins. Co. of N. Am.*,
No. CV 06-4766 CAS, 2008 WL 3009889 (C.D. Cal. Mar. 20, 2008) .................... 14

*Minich v. Allstate Ins. Co.*,
193 Cal. App. 4th 477 (2011) ................................................................................. 18

*Moss v. Infinity Ins. Co.*,
No. 15-CV-03456-JSC, 2015 WL 7351395 (N.D. Cal. Nov. 20, 2015) .................. 19

*Moss v. U.S. Secret Serv.*,
572 F.3d 962 (9th Cir. 2009) .................................................................................... 6

*MRI Healthcare Ctr. of Glendale, Inc. v. State Farm Gen. Ins. Co.*,
187 Cal. App. 4th 766 (2010) ............................................................................. 14, 15

*Native Vill. of Noatak v. Blatchford*,
38 F.3d 1505 (9th Cir. 1994), *overruled on other grounds by Bd. of
Trustees of Glazing Health & Welfare Tr. v. Chambers*, 941 F.3d 1195
(9th Cir. 2019) ......................................................................................................... 17

*Navarro v. Block*,
250 F.3d 729 (9th Cir. 2001) ..................................................................................... 6

*O'Keefe v. Allstate Indem. Co.*,
953 F. Supp. 2d 1111 (S.D. Cal. 2013) .................................................................... 18

*Or. Shakespeare Festival Ass'n v. Great Am. Ins. Co.*,
No. 1:15-cv-01932-CL, 2017 WL 1034203 (D. Or. Mar. 6, 2017) ......................... 15

*Oregon Shakespeare Festival Ass'n v. Great Am. Ins. Co.*,
No. 1:15-cv-01932-CL, 2016 WL 3267247 (D. Or. June 7, 2016) .......................... 15

*Palmer v. Truck Ins. Exch.*,
21 Cal. 4th 1109 (1999) .......................................................................................... 7, 9

1
2

# TABLE OF AUTHORITIES
*(continued)*

Page(s)

3
4

*Paradies Shops, Inc. v. Hartford Fire Ins. Co.*,
    No. 1:03-CV-3154-JEC, 2004 WL 5704715 (N.D. Ga. Dec. 15, 2004) ................. 12

5
6

*Philadelphia Parking Auth. v. Fed. Ins. Co.*,
    385 F. Supp. 2d 280 (S.D.N.Y. 2005) ........................................................ 12

7
8
9

*R. L. H., III by & through Hunter v. United Servs. Auto. Ass'n*,
    No. EDCV 07-942-VAP, 2008 WL 11336180 (C.D. Cal. Apr. 10,
    2008), *aff'd sub nom. R.L.H. ex rel. Hunter v. United Servs. Auto.
    Ass'n*, 327 F. App'x 714 (9th Cir. 2009) .................................................. 17

10
11

*Roug v. Ohio Sec. Ins. Co.*,
    182 Cal. App. 3d 1030 (1986) .................................................................... 7

12
13

*S. Hospitality, Inc. v. Zurich Am. Ins.*,
    393 F.3d 1137 (10th Cir. 2004) ......................................................... 11, 12

14
15

*Safeco Ins. Co. v. Gilstrap*,
    141 Cal. App. 3d 524 (1983) ...................................................................... 7

16

*Sarchett v. Blue Shield of Cal.*,
    43 Cal. 3d 1 (1987) ................................................................................... 20

17
18

*Shroyer v. New Cingular Wireless Servs., Inc.*,
    622 F.3d 1035 (9th Cir. 2010) .................................................................. 22

19
20
21

*Sigma Fin. Corp. v. Gotham Ins. Co.*,
    No. SACV 15-01531 AG, 2017 WL 9511732 (C.D. Cal. Mar. 31,
    2017) ....................................................................................................... 18

22
23

*Ski Shawnee, Inc. v. Commonwealth Ins. Co.*,
    No. 3:09-CV-02391, 2010 WL 2696782 (M.D. Pa. July 6, 2010) ........................... 13

24

*Social Life Magazine, Inc. v. Sentinel Ins. Co. Ltd.*,
    No. 20 Civ. 3311 (VEC) (S.D.N.Y. May 14, 2020) ................................... 15

25
26

*State Farm Fire & Cas. Co. v. Superior Court*,
    215 Cal. App. 3d 1435 (1989) .................................................................. 15

27
28

*Sybersound Records, Inc. v. UAV Corp.*,
    517 F.3d 1137 (9th Cir. 2008) .................................................................. 22

Gibson, Dunn &
Crutcher LLP

1

**TABLE OF AUTHORITIES**
*(continued)*

2

Page(s)

3

*Syufy Enterprises v. The Home Insurance. Co. of Indiana*,
4      1995 WL 129229 (N.D. Cal. Mar. 21, 1995) ............................................. 11

5   *Tarmann v. State Farm Mut. Auto. Ins. Co.*,
6      2 Cal. App. 4th 153 (1991) .......................................................................... 21

7   *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
8      551 U.S. 308 (2007)...................................................................................... 3

9   *Turner v. City & Cty. of San Francisco*,
   788 F.3d 1206 (9th Cir. 2015) ..................................................................... 6

10

11  *Van Patten v. Vertical Fitness Grp., LLC*,
   847 F.3d 1037 (9th Cir. 2017) ..................................................................... 21

12  *Vess v. Ciba-Geigy Corp. USA*,
13     317 F.3d 1097 (9th Cir. 2003) ................................................................ 7, 20

14  *W. Air Charter, Inc. v. Sojitz Corp.*,
15     No. CV 18-7361 JGB (KSX), 2019 WL 4509304 (C.D. Cal. May 2,
   2019) ............................................................................................................ 21

16

17  *Waller v. Truck Ins. Exch., Inc.*,
   11 Cal. 4th 1 (1995) .................................................................................... 18

18

19  *Ward General Ins. Servs., Inc. v. Employers Fire Ins. Co.*,
   114 Cal. App. 4th 548 (Ct. App. 2003) ...................................................... 15

20

21  *Welles v. Turner Entm't Co.*,
   503 F.3d 728 (9th Cir. 2007) ....................................................................... 6

22  *Yahoo! Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*,
23     255 F. Supp. 3d 970 (N.D. Cal. 2017)......................................................... 6

24

**Statutes**

25

Cal. Bus. & Prof. Code § 17200 ........................................................... 2, 4, 19

26

Cal. Civ. Code § 1638................................................................................ 7, 9

27

Cal. Civ. Code § 1646.................................................................................... 6

28

Gibson, Dunn &
Crutcher LLP

Defendant The Travelers Indemnity Company of
Connecticut's Motion to Dismiss FAC

vii

2:20-cv-04418-SVW-AS

# TABLE OF AUTHORITIES
*(continued)*

Page(s)

**Other Authorities**

Kornblum et al., Cal. Practice Guide: Bad Faith ........................................................... 17

**Rules**

Fed. R. Civ. P. 9(b) ................................................................................................ 7, 20

Gibson, Dunn &
Crutcher LLP

Defendant The Travelers Indemnity Company of
Connecticut's Motion to Dismiss FAC

viii

2:20-cv-04418-SVW-AS

The Travelers Indemnity Company of Connecticut ("Travelers")[1] hereby submits this memorandum of points and authorities in support of its Motion to Dismiss Plaintiff's First Amended Complaint ("FAC").  *See* ECF No. 22.

## I.     INTRODUCTION

The COVID-19 pandemic has affected the public and most businesses throughout the country in unprecedented ways.  But these challenging and unfortunate circumstances do not create insurance coverage for losses that fall outside the terms of a policyholder's insurance contract.

Plaintiff 10E, LLC ("Plaintiff" or "10E") asks this Court to declare that 10E is entitled to insurance coverage for the restaurant's claimed business income losses allegedly caused by the "Safer at Home" order that Mayor Garcetti issued to combat the spread of COVID-19 (the "Order").  But 10E ignores the material terms of its Travelers insurance policy—foremost among them an explicit exclusion of *any* type of property coverage, including Civil Authority coverage, for *any* "loss or damage resulting from any virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease."

The case-dispositive virus exclusion is not the only reason 10E's FAC fails as a matter of law.  Rather, 10E has not pleaded and cannot plead the facts necessary to establish that it is entitled to Civil Authority coverage, Business Income and Extra Expense coverage, or any of the derivative declarations or damages that 10E seeks.

As to Civil Authority coverage, the Policy terms require an "action of civil authority that prohibits access to the described premises"—but 10E fails to plausibly allege that the Order "prohibited access" to its premises.  In fact, 10E's allegations are directly at odds with this requirement, admitting that its delivery and takeout services

---

[1]  The Complaint properly named The Travelers Indemnity Company of Connecticut, the entity that issued Plaintiff's policy, as a defendant in this action.  Plaintiff's First Amended Complaint appears to have replaced this entity with "Travelers Property Casualty Company of America."  Because the Court has not approved a change to the case caption (and Plaintiff's proposed change is incorrect), Travelers has not modified the case caption to reflect the erroneously substituted defendant.

are exempt under the Order.  Courts nationwide have repeatedly held that to "prohibit access" requires that government authorities completely prevent access to the premises.

As to Business Income and Extra Expense coverage, 10E fails to allege facts demonstrating that it suffered a "direct physical loss of or damage to [the insured] property," an express prerequisite for coverage.  To the contrary, 10E pleads that it suffered physical damage not by "actual physical injury" but through "the labeling of the insured property as nonessential."  FAC ¶ 19.  But "labeling" a property does not create physical damage, and no court has ever adopted such a counter-textual and absurd expansion of that policy language.

Again, even if 10E pleaded these factual requirements for coverage, its insurance claim—which results from the Coronavirus—remains *expressly excluded* by the virus exclusion.  The FAC should be dismissed with prejudice because, as a matter of law, 10E cannot plead an entitlement to coverage under its insurance policy.[2]

## II.   PROCEDURAL HISTORY AND ALLEGED FACTS

### A.   This Lawsuit

10E commenced this declaratory judgment action on April 10, 2020, in Los Angeles Superior Court, against Travelers and Los Angeles Mayor Eric Garcetti.[3]  On May 15, 2020, Travelers removed the action to this Court and on May 22, 2020, moved to dismiss the Complaint.  *See* ECF Nos. 1, 14.  On June 12, 2020, 10E filed the FAC, mooting Travelers' initial motion to dismiss.  *See* ECF No. 22.

---

[2]  Because 10E cannot plead facts to establish coverage, its claims for breach of contract and bad faith premised on the wrongful denial of coverage likewise fail as a matter of law.  10E's derivative claim for violation of California Business and Professions Code § 17200 likewise fails as a matter of law, as 10E does not plead any fraudulent, unfair, or unlawful conduct.

[3]  Mayor Garcetti is neither a party to the insurance contract at issue nor does he have any rights or obligations under that contract.  As explained in the Notice of Removal, Mayor Garcetti was fraudulently joined in this lawsuit and the Court should disregard his citizenship and assert its subject matter jurisdiction over this action.

In its FAC, 10E again alleges that a Travelers insurance policy bearing policy number 680-4G700062 (the "Policy") insures losses of "business income and additional expenses" "caused by" Mayor Garcetti's Executive Order ("Order") relating to the "Coronavirus" and the "global COVID-19 pandemic." FAC ¶¶ 2, 6–28.[4]  The Policy, which is incorporated by reference into the FAC, was issued by Travelers. *See* Kupec Decl., Ex. 1 & RJN.[5]

According to the FAC, on "March 15, 2020," Mayor Garcetti issued the Order "directing all 'non-essential' businesses to be closed in Los Angeles."[6]  FAC ¶ 18. 10E's allegations concede that restaurant delivery and takeout services are exempt from the Order.  *Id.* ¶ 22.  The FAC alleges that the Order was "based on the dire risks of exposure with the contraction of COVID-19 and evidence of physical damage to property."  *Id.* ¶ 18.  10E expressly acknowledges that it is *not* seeking a determination that the Coronavirus was "physically in the Insured Premises."  *Id.* ¶ 29.

10E seeks coverage for "'Business Income and Extra Expense Coverage' in the event of business closures by order of Civil Authority."  *Id.* ¶ 11.  The FAC frames four purported insurance coverage issues for which Plaintiff seeks declaratory

---

[4]  Travelers notes that the FAC paragraph numbering runs through paragraph 28 in the Factual Background section, then reverts to numbering paragraphs from 23 in the First Cause of Action section.  *See* FAC at 6.  Thus, the FAC contains two of paragraphs 23 through 28.  Where Travelers cites paragraphs 23 through 28 within the First Cause of Action section, the citations will additionally note that section, *e.g.*, "FAC ¶ 23 (First Cause of Action)."

[5]  10E expressly incorporates the Policy into the FAC.  FAC ¶ 35; *see also Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) (in ruling on a motion to dismiss, a court "must consider the complaint in its entirety, as well as . . . documents incorporated into the complaint by reference"); *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005); *see also, e.g.*, *Camp Richardson Resort, Inc. v. Philadelphia Indem. Ins. Co.*, 150 F. Supp. 3d 1186, 1189 (E.D. Cal. 2015) (insurance policy).

[6]  Although the FAC alleges that the Order was issued March 15, 2020, the allegations indicate that Plaintiff is referring to Mayor Garcetti's March 19, 2020 (reissued April 1, 2020) "Safer at Home" order, which ordered restrictions on certain non-essential activities and operations.

judgment:  (1) that the Order "constitutes a prohibition of access to Plaintiff's Insured Premises"; (2) that the "prohibition of access by the Order is specifically prohibited access as defined in the Policy"; (3) that the Order "triggers coverage because the Policy does not include an exclusion for a viral pandemic and actually extends coverage for loss or damage due to physical loss and damage, including by virus"; and (4) that "the Policy provides coverage to Plaintiff for any current and future civil authority closures of restaurants in California due to physical loss or damage from the Coronavirus under the Civil Authority coverage parameters and the Policy provides business income coverage in the event that Coronavirus has caused a loss or damage at the insured premises or immediate area of the insured premises."  FAC, Prayer for Relief ¶¶ 1–4.  The FAC also alleges breach of contract, bad faith, and violation of California Business & Professions Code § 17200 ("UCL").  FAC ¶¶ 30–55.

### B.    Contract Language at Issue

#### 1.    The Relevant Coverage Provisions

10E purchased a Restaurant PAC Plus Policy from Travelers, a policy that insures 10E's property from covered causes of loss, such as a fire or windstorm. Consider a fire that requires a suspension of business operations.  The Policy would cover lost business income or increased expenses resulting from the suspension of operations caused by the fire and occurring while the repairs are being made—during the "period of restoration."  10E's Business Income coverage provides, in relevant part:

> **(2)**   We will pay for the actual loss of Business Income you sustain due to the necessary 'suspension' of your 'operations' during the 'period of restoration'.  The 'suspension' must be caused by direct physical loss of or damage to property at the described premises.  The loss or damage must be caused by or result from a Covered Cause of Loss. . . .

Kupec Decl., Ex. 1 at 108–09.

1      And 10E's Extra Expense coverage provides, in relevant part:

2          **(1)**   Extra Expense means reasonable and necessary expenses you

3              incur during the "period of restoration" that you would not have

4              incurred if there had been no <u>direct physical loss of or damage to</u>

5              <u>property caused by or resulting from a Covered Cause of Loss</u>.

6  *Id.* at 109 (underscore added).

7      "Covered Causes of Loss" are "RISKS OF DIRECT PHYSICAL LOSS unless

8  the loss is . . . [e]xcluded."  *Id.* at 107–08.

9      In the provision entitled  "Civil Authority," coverage for Business Income and

10  Extra Expense resulting from a "Covered Cause of Loss" is extended to:

11          the actual loss of Business Income you sustain and reasonable and

12          necessary Extra Expense you incur caused by <u>action of civil authority</u>

13          <u>that prohibits access to the described premises</u>. The civil authority

14          action must be due to direct physical loss of or damage to property at

15          locations, other than described premises, that are within 100 miles of

16          the described premises, <u>caused by or resulting from a Covered Cause</u>

17          <u>of Loss</u>.

18  *Id.* at 121 (underscores added).  As highlighted, two key requirements for this coverage

19  to apply are: (i) a civil authority action must "prohibit" access to the insured's

20  premises, and (ii) the action must be due to physical property loss or damage "caused

21  by or resulting from a Covered Cause of Loss" (i.e., a cause that is not excluded from

22  coverage).

23          **2.**     **The Virus Exclusion**

24      The Policy contains an endorsement entitled "EXCLUSION OF LOSS DUE TO

25  VIRUS OR BACTERIA," which "applies to all coverage under all forms and

26  endorsements that comprise" the Commercial Property Coverage Part of the Policy

27  "including but not limited to forms or endorsements that cover . . . business income,

28

extra expense, rental value or action of civil authority."  The exclusion concisely states in plain terms that:

> We will not pay for loss or damage caused by or resulting from any virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease.

*Id.* at 247 (underscores added).

## III.   LEGAL STANDARD

A complaint should be dismissed under Federal Rule of Civil Procedure 12(b)(6) when "there is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory."  *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (complaint must "state a claim to relief that is plausible on its face.").  Although "a court must take all allegations of material fact as true and construe them in the light most favorable to the nonmoving party," *Turner v. City & Cty. of San Francisco*, 788 F.3d 1206, 1210 (9th Cir. 2015), dismissal is warranted when "the complaint [can]not be saved by any amendment," *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 972 (9th Cir. 2009) (quotation marks omitted).  If a complaint fails to state a plausible claim, a district court should grant leave to amend "unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (*en banc*) (quotation marks omitted).

Under California law,[7] the terms of an insurance policy must be given their "ordinary and popular sense," and if the policy language is "clear and explicit," it

---

[7] California law applies here because the parties are before the Court in diversity and thus the forum state's choice-of-law principles apply. *Welles v. Turner Entm't Co.*, 503 F.3d 728, 738 (9th Cir. 2007); *Yahoo! Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 255 F. Supp. 3d 970, 973 n.1 (N.D. Cal. 2017).  Under California law, a "contract is to be interpreted according to the law and usage of the place where it is to be performed; or . . . where it is made."  Cal. Civ. Code § 1646.  Because the Policy here concerns rights and responsibilities with respect to property in California, California law governs.  *See Cont'l Cas. Co. v. City of Richmond*, 763 F.2d 1076, 1079 (9th Cir. 1985).

governs.  *Palmer v. Truck Ins. Exch.*, 21 Cal. 4th 1109, 1115–17 (1999) (quotation marks omitted); Cal. Civ. Code § 1638 ("The language of a contract is to govern its interpretation, if the language is clear and explicit, and does not involve an absurdity.").  Indeed, "[a]n insurance policy is but a contract[] and, like all other contracts it must be construed from the language used; when the terms are plain and unambiguous, it is the duty of courts to enforce the agreement." *Roug v. Ohio Sec. Ins. Co.*, 182 Cal. App. 3d 1030, 1035 (1986) (quotation marks omitted).  Moreover, courts may not "rewrite a policy to bind the insurer to a risk that it did not contemplate and for which it has not been paid." *Safeco Ins. Co. v. Gilstrap*, 141 Cal. App. 3d 524, 533 (1983); *see also Certain Underwriters at Lloyd's of London v. Superior Court*, 24 Cal. 4th 945, 968 (2001) ("[W]e do not rewrite any provision of any contract, including the [insurance policy at issue], for any purpose.").  If a complaint "place[s] a clearly erroneous construction upon the provisions of the contract," that construction should be rejected and the complaint dismissed.  *See Marzec v. California Pub. Employees Ret. Sys.*, 236 Cal. App. 4th 889, 909 (2015) (quotation marks omitted).

Rule 9(b) requires a plaintiff to plead its UCL claim with particularity (to the extent it sounds in fraud), including the "who, what, when, where, and how" of the alleged fraudulent conduct and "what is false or misleading about the purportedly fraudulent statement, and why it is false." *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 964 (9th Cir. 2018) (quoting *Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011)); *see also Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003).

## IV.   ARGUMENT

The facts pleaded in the FAC demonstrate as a matter of law that 10E cannot prove an entitlement to coverage under the Policy.  Indeed, the FAC seeks coverage for losses that 10E alleges were caused by a "Safer At Home" order issued to combat the spread of a virus—yet, as previously described, the Policy contains an explicit exclusion of *any* type of property coverage for *any* "loss or damage resulting from any

virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease."  For this reason alone, the FAC's claims for declaratory relief regarding coverage, breach of contract, and bad faith breach of the implied covenant of good faith and fair dealing should be dismissed with prejudice.  The derivative UCL claim should likewise be dismissed with prejudice because 10E fails to plead any unlawful, fraudulent, or unfair conduct as a matter of law.

### A.     10E Is Not Entitled to Civil Authority Coverage

Civil Authority coverage insures certain business losses and expenses "caused by action of civil authority" that are "due to direct physical loss of or damage to property . . . *caused by or resulting from a Covered Cause of Loss.*"  Kupec Decl., Ex. 1 at 121 (emphasis added).  Here, the Policy explicitly excludes losses "resulting from any virus" from its Covered Causes of Loss.  *Id.* at 247.  Moreover, the "action of civil authority" must "*prohibit[] access* to the described premises" for there to be any potential of coverage, *id.* at 121 (emphasis added), and 10E concedes that access was not prohibited, *see* FAC ¶ 22.  Because 10E's allegations fail to satisfy either element, dismissal is warranted as to 10E's requests regarding this coverage.

### 1.     Civil Authority Coverage Does Not Apply to Losses Caused by or Resulting from a Virus

Pursuant to the Policy's express terms, an "action of civil authority" can *only* give rise to coverage if, among other things, the action is taken "due to direct physical loss of or damage to property" "*caused by or resulting from a Covered Cause of Loss.*"  Kupec Decl., Ex. 1 at 121 (emphasis added).  As a matter of logic as well as explicit policy language, an *excluded* risk of loss is *not* a Covered Cause of Loss.

10E alleges that Mayor Garcetti issued the Order because of "the dire risks of exposure with the contraction of COVID-19 and evidence of physical damage to property."  FAC ¶ 18; *see also id.* ¶ 16 ("the Coronavirus is a cause of real physical loss and damage"); *id.* ¶ 28 (First Cause of Action) (seeking declaration that Policy provides coverage for civil authority closures "due to physical loss or damage from the

Coronavirus").[8]  10E also alleges that it shut down its business because "employees have refused to work out of fear of contracting the novel Coronavirus." *Id.* ¶ 22.  The alleged losses, therefore, are caused by or result from the Coronavirus, a risk of loss that falls squarely within the Policy's broad exclusion of "loss or damage *caused by or resulting from any virus*, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease."  Kupec Decl., Ex. 1 at 247 (emphasis added).  And the exclusion expressly applies to civil authority coverage.  *Id.* ("The exclusion . . . applies to . . . forms or endorsements that cover business income, extra expense, rental value or *action of civil authority*." (emphasis added)).

California law instructs that when the language of a policy "is clear and explicit," as it is here, the language governs.  *Palmer*, 21 Cal. 4th at 1115; Cal. Civ. Code § 1638.  California courts evaluating policy exclusions foreclosing coverage for losses "caused by or resulting from" specified non-covered risks have found the provisions unambiguous and applied their plain meaning.  *See, e.g.*, *Atlas Assurance Co. v. McCombs Corp.*, 146 Cal. App. 3d 135, 149 (1983); *see also Fireman's Fund Ins. Co. v. Superior Court*, 65 Cal. App. 4th 1205, 1212–13 (1997) (a court "will not strain to create an ambiguity where none exists or indulge in tortured constructions to divine some theoretical ambiguity in order to find coverage where none was contemplated").[9]

---

[8]  Although Travelers does not seek adjudication of this issue on this motion, the Coronavirus causing COVID-19 does not and cannot cause physical damage to property.  *See infra* at 14.

[9]  While few courts have had occasion to construe a virus or microorganism exclusion, courts have enforced them in accordance with their clear and unambiguous language.  *See, e.g.*, *Certain Underwriters at Lloyd's London v. Creagh*, Civ. A. No. 12-571, 2013 WL 3213345, at *4 (E.D. Pa. June 26, 2013) (holding that exclusion for "any loss . . . arising out of or relating to . . . [a] microorganism of any type" precluded coverage for damage to bathroom caused by bacteria from dead body), *aff'd*, 563 F. App'x 209 (3d Cir. 2014); *Doe v. State Farm Fire & Cas. Co.*, No. 2015-0136, 2015 WL 11083311, at *2 (N.H. Sept. 21, 2015) ("We conclude that a reasonable person in the position of the insured, based upon more than a casual reading of the policy as a whole, would understand the

There is no question that the plain language of the virus exclusion controls here. The FAC specifically (and necessarily) describes the "Coronavirus" as a "virus" and acknowledges that it is "deadly" and poses "dire risks" of "contract[ing] . . . COVID-19," the disease which results from infection by the virus. FAC ¶¶ 16–18. Thus, as alleged by 10E, the Coronavirus is a virus "capable of inducing physical distress, illness or disease," which falls squarely within the scope of the virus exclusion. Kupec Decl., Ex. 1 at 247. The Coronavirus is not a Covered Cause of Loss and therefore cannot give rise to Civil Authority coverage.

Nonetheless, 10E explicitly requests declarations that coverage would exist for losses caused by or resulting from the Coronavirus (or a "viral pandemic"). FAC ¶¶ 27–28 (First Cause of Action). To grant 10E's request would "strain[] reason" and require "precisely the opposite" of the plain meaning of the virus exclusion, which unambiguously precludes coverage for any loss "caused by or resulting from" a virus. *See Atlas Assurance*, 146 Cal. App. 3d at 149; Kupec Decl., Ex. 1 at 247. Such a result would effectively "rewrite" the Policy and improperly bind Travelers "to a risk that it did not contemplate and for which it has not been paid." *Atlas Assurance*, 146 Cal. App. 3d at 149; *Marzec*, 236 Cal. App. 4th at 909–10 ("The fundamental goal of contract interpretation is to give effect to the mutual intention of the parties as it existed at the time they entered into the contract." (quotation marks omitted)).

Because 10E's construction of the Policy requires that the virus exclusion be ignored, it is "clearly erroneous" and unreasonable, and thus dismissal is warranted on this basis. *Marzec*, 236 Cal. App. 4th at 909 (when the insured "place[s] a clearly

_____

policy to exclude all diseases and viruses that can be transmitted from one person to another."); *Lambi v. Am. Family Mut. Ins. Co.*, 498 F. App'x 655, 656 (8th Cir. 2013) ("[T]he policy excluded bodily injury arising out of the actual or alleged transmission of a communicable disease, and infecting another with the HIV virus clearly falls within the plain and ordinary meaning of the transmission of a communicable disease."); *Clarke v. State Farm Fla. Ins.*, 123 So. 3d 583, 584 (Fla. Dist. Ct. App. 2012) (similar result, finding exclusion unambiguous).

erroneous construction upon the provisions of the contract," that construction cannot be accepted and the FAC should be dismissed (quotation marks omitted)).

## 2. Civil Authority Coverage Does Not Apply Because the FAC Admits the Order Did Not "Prohibit Access" to 10E's Premises

10E's allegations also fail to establish Civil Authority coverage for the independent reason that the FAC *concedes* the Order did not "prohibit access" to the described premises, 10E's restaurant. While 10E alleges that its "business has been shut down" because "[a]s a direct and proximate result of [the] Order, access to Plaintiff's Insured Property has been specifically prohibited and Plaintiff's employees have refused to work out of fear of contracting the novel Coronavirus," 10E admits that delivery and takeout services are exempted from the order. FAC ¶ 22. These allegations do not satisfy the requirements for coverage under the plain language of the Policy.

Courts interpreting civil authority provisions uniformly require the phrase "prohibit access" to mean to "formally forbid" or "prevent" any access to the premises. *See, e.g.*, *S. Hospitality, Inc. v. Zurich Am. Ins.*, 393 F.3d 1137, 1140 (10th Cir. 2004) (quotation marks omitted). A voluntary closure or limitations restricting access are not sufficient. For example, in *Syufy Enterprises v. The Home Ins. Co. of Indiana*, the district court addressed civil authority coverage for businesses affected by "dawn-to-dusk" curfews imposed by cities during the Rodney King riots. 1995 WL 129229 (N.D. Cal. Mar. 21, 1995). A movie theater operator cancelled showings during the curfew period, presumably because customers could not attend. *Id.* at *1. Although the orders caused the insured's business to suffer, coverage was not implicated because the orders did not "deny access to a Syufy theater" or "prohibit[] any individual from entering a theater." *Id.* at *2. That the insured "opted to close its theaters" as a result of the curfews did not satisfy the policy language. *Id.*

Civil authority coverage cases in California and elsewhere after the September 11, 2001 terrorist attacks reinforced this distinction between orders that "prohibit

access" to an insured premises and those that, as 10E describes, impact business operations and cause a "substantial loss of business income," FAC ¶ 28, but do not prohibit access.  In *Backroads Corp. v. Great Northern Ins.*, No. C 03-4615 VRW, 2005 WL 1866397 (N.D. Cal. Aug. 1, 2005), after the FAA grounded domestic air traffic in the days following September 11, the court rejected a vacation tour operator's claim for civil authority coverage for trip reimbursements to customers.  Although the orders prevented customers from utilizing their vacation packages and caused the insured's business to suffer, there was no coverage because "the FAA's order did not prohibit access to [the insured]'s premises."  *Id.* at *6.

Courts across the country similarly rejected attempts by hotels, airport parking garages, and even airport gift shops to claim coverage for losses incurred as a result of the FAA orders because they did not "prohibit access" to the various businesses.  *See S. Hospitality*, 393 F.3d at 1140 ("The FAA order prohibited access to airplane flights; it did not prohibit access to hotel operations."); *730 Bienville Partners, Ltd. v. Assurance Co. of Am.*, 67 F. App'x 248 (5th Cir. 2003) (unpublished) ("The generally prevailing meaning of 'prohibit' is . . . 'to forbid by authority or command,'" and "[i]t is undisputed that the FAA did not forbid any person to access the [insured's] hotels" after the September 11th attacks); *Philadelphia Parking Auth. v. Fed. Ins. Co.*, 385 F. Supp. 2d 280, 289 (S.D.N.Y. 2005) (while an order "may have temporarily obviated the need for Plaintiff's parking services, it did not prohibit access to Plaintiff's garages and therefore cannot be used to invoke coverage"); *Paradies Shops, Inc. v. Hartford Fire Ins. Co.*, No. 1:03-CV-3154-JEC, 2004 WL 5704715, at *7 (N.D. Ga. Dec. 15, 2004) ("The Court sees no reasonable means of construing [the] order to ground all aircraft as an order specifically forbidding access to plaintiff's premises" in airport terminal stores).

Likewise, while post-September 11th orders closing lower Manhattan businesses in the days following the attacks "prohibited access" to businesses, subsequent "vehicular traffic prohibitions" were insufficient to trigger coverage even though they

"restrain[ed] . . . normal operating procedures" for businesses.  *Abner, Herrman &*
*Brock, Inc. v. Great N. Ins. Co.*, 308 F. Supp. 2d 331, 335–36 (S.D.N.Y. Mar. 12,
2004); *see also 54th St. Ltd. Partners, L.P. v. Fid. & Guar. Ins. Co.*, 763 N.Y.S.2d
243, 244 (N.Y. App. Div. 2003).

As 10E acknowledges in the FAC, the Order does not prohibit access to 10E's
premises because the Order permits delivery and takeout services alike.  FAC ¶ 22.
The Policy, however, requires that an applicable order "prohibit" access, not limit
access.  Courts uniformly hold that this language requires that an order "completely
prohibit[] access"—not "merely hinder[] access"—to implicate coverage.  *Ski*
*Shawnee, Inc. v. Commonwealth Ins. Co.*, No. 3:09-CV-02391, 2010 WL 2696782, at
\*4–5 (M.D. Pa. July 6, 2010) (no coverage when an order closed the main road to a ski
resort, but another road was available to 30% of patrons); *see also Commstop, Inc. v.*
*Travelers Indem. Co. of Conn.*, No. cv-11-1257, 2012 WL 1883461, at \*9 (W.D. La.
May 17, 2012) (coverage only applies where access is "totally and completely
prevented—i.e., made impossible" by the civil authority action); *Kean, Miller,*
*Hawthorne, D'Armond McCowan & Jarman, LLP v. Nat'l Fire Ins. Co. of Hartford*,
No. CIV. A. 06-770-C, 2007 WL 2489711, at \*4 (M.D. La. Aug. 29, 2007) (no
coverage when order "encouraged" residents to stay off streets before hurricane,
because it did not "*actually and completely* prohibit[] access" (emphasis in original));
*By Dev., Inc. v. United Fire & Cas. Co.*, No. CIV. 04-5116, 2006 WL 694991, at \*5
(D.S.D. Mar. 14, 2006), *aff'd*, 206 F. App'x 609 (8th Cir. 2006).  10E has not and
cannot allege that the Order "completely prohibited" access to its business premises.

Thus, as a matter of law, 10E is not entitled to a declaration establishing Civil
Authority coverage under the Policy because the FAC does not allege (1) physical loss
or damage to property "caused by or resulting from a Covered Cause of Loss" in light
of the virus exclusion; or (2) that the Order "prohibited access" to 10E's premises.
Amendment cannot cure these defects because the lawsuit is premised on purported

"damage" allegedly caused by the Coronavirus and the terms of the Order, neither of which can be altered by amendment.

### B. Business Income and Extra Expense Coverage Does Not Apply as a Matter of Law

10E also is not entitled to Business Income and Extra Expense coverage as a matter of law.  The Policy provides coverage for "actual loss of Business Income . . . due to the necessary 'suspension' of [Plaintiff's] 'operations'" only if (1) the suspension is "caused by direct physical loss of or damage to property at the described premises," and (2) the direct physical loss or damage is "caused by or result[s] from a Covered Cause of Loss."  Kupec Decl., Ex. 1 at 108–09.  The Extra Expense provision similarly requires "direct physical loss of or damage to property" that is "caused by or resulting from a Covered Cause of Loss."  *Id.* at 108.  The FAC, however, contains no plausible allegations of "physical loss of or damage to property" *anywhere*, let alone at 10E's restaurant, and even expressly disavows any suggestion that the Coronavirus was present in 10E's restaurant, affirmatively stating that it is *not* seeking "any determination of whether the Coronavirus is physically in the Insured Premises."  FAC ¶ 29 (First Cause of Action).  Because 10E does not allege direct physical loss of or damage to property at its premises, dismissal is warranted on this basis alone.

10E advances the novel theory that "the labeling" of a property "as non-essential" constitutes direct physical loss.  FAC ¶ 19.  But as an initial matter, 10E does not allege that *its own* property was labeled "non-essential," and as explained above, 10E *admits* that its takeout and delivery services were explicitly exempt from any such labeling.  *Id.* ¶ 22.  In any event, California courts require "a distinct, demonstrable, physical alteration of the property" to implicate coverage for direct physical loss.  *MRI Healthcare Ctr. of Glendale, Inc. v. State Farm Gen. Ins. Co.*, 187 Cal. App. 4th 766, 779 (2010) (quotation marks omitted).  "For there to be a 'loss' within the meaning of the policy, some *external force* must have acted upon the insured property to cause a *physical change* in the condition of the property, *i.e.*, it

must have been 'damaged' within the common understanding of that term." *Id.* at 780; *see also Meridian Textiles, Inc. v. Indem. Ins. Co. of N. Am.*, No. CV 06-4766 CAS, 2008 WL 3009889, at \*6 (C.D. Cal. Mar. 20, 2008) (in order to establish direct physical loss or damage to yarn, insured was required to show "some tangible change in the yarn" or "some detectable physical change"); *Social Life Magazine, Inc. v. Sentinel Ins. Co. Ltd.*, No. 20 Civ. 3311 (VEC) (S.D.N.Y. May 14, 2020 transcript) (available at ECF No. 24-1) (court explaining that COVID-19 "damages lungs," "[i]t doesn't damage printing presses" or other property, and "this is just not what's covered under these insurance policies").[10]

10E never alleges any physical alteration of its property, and courts have rejected similar attempts to convert *non*-physical impacts—such as "intangible or incorporeal" losses—into claims for physical damage. *MRI Healthcare*, 187 Cal. App. 4th at 778–79 (quotation marks omitted); *see also Doyle v. Fireman's Fund Ins. Co.*, 21 Cal. App. 5th 33, 39 (2018) (diminution in value of wine collection after purchase of counterfeit wine was not a covered peril, because it was not property damage; plaintiff bought a property and not "provenance" insurance policy (emphasis omitted)), *review denied* (June 13, 2018); *State Farm Fire & Cas. Co. v. Superior Court*, 215 Cal. App. 3d 1435, 1445 (1989) ("Neither diminution in value nor the cost of repair or replacement are active physical forces—they are not the cause of the damage to the

---

[10]  10E's own cases support Travelers' position.  In *Oregon Shakespeare Festival Ass'n v. Great American Ins. Co.*, No. 1:15-cv-01932-CL, 2016 WL 3267247, at \*1, 5–6 (D. Or. June 7, 2016) (cited at FAC ¶ 20) (applying Oregon, not California law), there was no debate that wildfire smoke, evidenced by soot and ash, reached and impacted the insured outdoor theater.  Here, Plaintiff makes no argument that Coronavirus reached its premises, let alone physically altered its premises.  Plaintiff further fails to note that the Oregon order was ***vacated***.  *See Or. Shakespeare Festival Ass'n v. Great Am. Ins. Co.*, No. 1:15-cv-01932-CL, 2017 WL 1034203, at \*1 (D. Or. Mar. 6, 2017).  In *Ward General Ins. Servs., Inc. v. Employers Fire Ins. Co.*, 114 Cal. App. 4th 548 (2003) (cited at FAC ¶ 21), the court held that "the loss of the database, with its consequent economic loss, *but with no loss of or damage to tangible property*, was not a 'direct physical loss of or damage to' covered property under the terms of the subject insurance policy, and, therefore, the loss [wa]s not covered." *Id.* at 556–57 (emphasis added).

structures; they are the measure of the loss or damage."); *Herr v. Forghani*, 161 Wash. App. 1037 (2011) ("[Plaintiff] must show direct physical loss to tangible property.  His claim of reduced property value caused by increased easement use falls outside the policy's coverage.").

But even if 10E had alleged direct physical loss of or damage to property at the insured premises, there is no Business Income or Extra Expense coverage for the same reason that there is no Civil Authority coverage:  a virus is not a Covered Cause of Loss.  The virus exclusion expressly applies to Business Income and Extra Expense coverage.  Kupec Decl., Ex. 1 at 247 ("The exclusion . . . applies to . . . forms or endorsements that cover *business income, extra expense*, rental value or action of civil authority." (emphasis added)).  10E's only allegations of purported physical loss or damage to property are those caused by or resulting from the Coronavirus (FAC ¶¶ 16, 18, 21), and the Policy precludes Business Income and Extra Expense coverage claimed on this basis.  Thus, as a matter of law, 10E's FAC premised on the Coronavirus cannot trigger Business Income or Extra Expense coverage.

## C.   Dismissal of the First Cause of Action Is Proper Because 10E Is Not Entitled to Any of Its Requested Declarations

Because 10E cannot demonstrate as a matter of law that it is entitled to insurance coverage, it is not entitled to any of the declarations it seeks.  10E has specifically requested four declarations pertaining to coverage under the Policy.  FAC, Prayer for Relief ¶¶ 1–4.  As discussed above, 10E has failed to state a claim that Civil Authority or Business Income and Extra Expense coverage exists (the fourth declaration); that the Policy does not exclude a viral pandemic and extends coverage for loss or damage due to physical loss or damage, including by virus (the third declaration); or that the Order prohibited access to 10E's insured premises in any way triggering coverage under the Civil Authority provision of the Policy (the first and second declarations).  Thus, no cognizable legal theory or set of facts has been alleged to sustain any of the declarations.

Indeed, because 10E has failed to allege that it is entitled to a declaration of coverage, the Court can dismiss all other derivative declaration requests as moot. *See Native Vill. of Noatak v. Blatchford*, 38 F.3d 1505, 1514 (9th Cir. 1994) ("The district court, . . . may grant declaratory relief only when there is an actual case or controversy; a declaratory judgment may not be used to secure judicial determination of moot questions."), *overruled on other grounds by Bd. of Trustees of Glazing Health & Welfare Tr. v. Chambers*, 941 F.3d 1195 (9th Cir. 2019); *see also Amaral v. Wachovia Mortg. Corp.*, 692 F. Supp. 2d 1226, 1236 & n.3 (E.D. Cal. 2010) (dismissing two of three requested declarations in part because "a determination as to whether Plaintiffs [were] entitled to the third requested declaration [would] involve an analysis of the issues surrounding the first two with no need for separate declarations on all three matters").

## D.     Dismissal of the Second Cause of Action for Breach of Contract Is Proper Because 10E Has Not Alleged Any Breach

"[A]bsent an actual withholding of benefits due, there is no breach of contract." *Love v. Fire Ins. Exch.*, 221 Cal. App. 3d 1136, 1151 n.10 (1990) (quoting Kornblum et al., Cal. Practice Guide: Bad Faith § 4:28, at 4–9) (emphasis omitted); *see also R. L. H., III by & through Hunter v. United Servs. Auto. Ass'n*, No. EDCV 07-942-VAP, 2008 WL 11336180, at *6 (C.D. Cal. Apr. 10, 2008), *aff'd sub nom. R.L.H. ex rel. Hunter v. United Servs. Auto. Ass'n*, 327 F. App'x 714 (9th Cir. 2009) (affirming summary judgment for insurer on breach of contract claim because policy exclusion facially denied coverage); *1231 Euclid Homeowners Ass'n v. State Farm Fire & Cas. Co.*, 135 Cal. App. 4th 1008, 1020–21 (2006) ("The failure of [a policy's] conditions precedent is a complete defense to [an insured's] breach of contract claim.").

Here, under the Policy's clear terms, 10E can plead neither "benefits due" nor "actual withholding." *Love*, 221 Cal. App. 3d at 1151 n.10 (citation and emphasis omitted). Because 10E is not entitled to coverage under the Policy as a matter of law,

"there is no breach of contract" and its claim must be dismissed.  *Id.* (citation and emphasis omitted).

## E.   Dismissal of the Third Cause of Action for Bad Faith Is Proper Because 10E Is Not Entitled to Coverage as a Matter of Law

To establish a claim for breach of the implied covenant of good faith and fair dealing, "(1) *benefits due under the policy* must have been withheld; and (2) the reason for withholding benefits must have been unreasonable or without probable cause." *Love*, 221 Cal. App. 3d at 1151 (emphasis added).  The "threshold requirement" in such a claim is that insurance coverage exists under the plaintiff's policy.  *Id.* at 1152. Thus, a bad faith claim "cannot be maintained unless policy benefits are due under a contract."  *Waller v. Truck Ins. Exch., Inc.*, 11 Cal. 4th 1, 35 (1995); *see, e.g.*, *Minich v. Allstate Ins. Co.*, 193 Cal. App. 4th 477, 493 (2011) (holding that a "claim for tortious breach of contract (bad faith) fails as a matter of law because [the insurer] did not breach the Policy" (emphasis omitted)); *Brown v. Mid-Century Ins. Co.*, 215 Cal. App. 4th 841, 858 (2013) ("Because the policy did not cover the [insureds'] claims, however, the [insureds] do not have a claim for breach of the implied covenant of good faith and fair dealing.").

Applying this well-established California law, district courts routinely dismiss claims for breach of the covenant of good faith and fair dealing when plaintiffs' allegations of coverage under their policies fail to state a claim.  *See Sigma Fin. Corp. v. Gotham Ins. Co.*, No. SACV 15-01531 AG, 2017 WL 9511732, at *2 (C.D. Cal. Mar. 31, 2017) (granting motion to dismiss with prejudice when the insurer "didn't breach the excess-liability insurance contract, so it follows that [the insured] can't possibly recover for breach of the implied covenant of good faith and fair dealing"); *O'Keefe v. Allstate Indem. Co.*, 953 F. Supp. 2d 1111, 1116 (S.D. Cal. 2013) ("Because [plaintiffs] cannot sue for bad faith without proving that benefits were withheld under the policy 'as written,' and because [plaintiffs] cannot establish that coverage existed under the express terms of the contract, there is no cause of action for

1    breach of the implied covenant of good faith and fair dealing."); *Moss v. Infinity Ins.*

2    *Co.*, No. 15-CV-03456-JSC, 2015 WL 7351395, at *5 (N.D. Cal. Nov. 20, 2015)

3    (dismissing implied covenant claim when the policy "excluded from coverage the

4    particular situation for which Plaintiff sought benefits").

5        Here, because 10E is not entitled to coverage under the Policy as a matter of

6    law, its claim for bad faith breach of the covenant of good faith and fair dealing must

7    be dismissed.

8    **F.    Dismissal of the Fourth Cause of Action for UCL Violations Is Proper**

9    **Because 10E Pleads No Fraudulent, Unfair, or Unlawful Conduct**

10       10E alleges that it has standing to pursue a UCL claim "based on its underlying

11   claims for Declaratory Relief, Breach of Contract and Breach of Implied Covenant of

12   Good Faith and Fair Dealing."  FAC ¶ 51.  Thus, because 10E's UCL claim is

13   derivative of the other causes of action, all of which fail as a matter of law, the UCL

14   claim must be dismissed as well.  *See Aleksick v. 7-Eleven, Inc.*, 205 Cal. App. 4th

15   1176, 1185 (2012); *Krantz v. BT Visual Images, LLC*, 89 Cal. App. 4th 164, 178

16   (2001) (finding viability of a UCL claim "stand[s] or fall[s] depending on the fate of

17   the antecedent substantive causes of action"); *see also Glenn K. Jackson Inc. v. Roe*,

18   273 F.3d 1192, 1203 (9th Cir. 2001) (finding Section 17200 claim failed where

19   underlying negligence and fraud claims failed).

20       In any event, 10E does not state a UCL claim.  To state a claim under the UCL,

21   a plaintiff must allege facts showing that the defendant was engaged in either an

22   "fraudulent," "unfair," or "unlawful" business practice.  *See* Cal. Bus. & Prof. Code

23   § 17200; *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163,

24   180 (1999).  Here, 10E fails to make clear which UCL prong it is pursuing (which

25   alone is grounds for dismissal) and fails to allege actionable facts for *any* prong.

26       ***Not "Fraudulent."***  This claim requires a plausible allegation that a "reasonable

27   consumer" is "likely to be deceived" by the defendant's alleged conduct.  *Lavie v.*

28   *Procter & Gamble Co.*, 105 Cal. App. 4th 496, 504 (2003) (quotation marks omitted).

UCL claims sounding in fraud "must state with particularity the circumstances constituting fraud." *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 964 (9th Cir. 2018) (quoting Fed. R. Civ. P. 9(b)). The "'pleading must identify the who, what, when, where, and how of the misconduct charged, as well as what is false or misleading about the purportedly fraudulent statement, and why it is false.'" *Id.* at 964 (quoting *Cafasso*, 637 F.3d at 1055); *see also Vess*, 317 F.3d at 1106 ("The plaintiff must set forth what is false or misleading about a statement, and why it is false." (quotation marks omitted)).

Here, the FAC alludes to two purported "misrepresentations": (1) that Travelers allegedly made an unspecified misrepresentation when it "provide[d] business interruption coverage due to the closure by order of civil authority," and (2) that "[a]ny effort by Travelers to deny the reality that the Coronavirus causes physical loss and damage *would* constitute" a misrepresentation. FAC ¶¶ 53, 24 (emphasis added). The first statement cannot be a misrepresentation as a matter of law because the Policy *does* provide Civil Authority coverage, even though this coverage is inapplicable here. Moreover, this allegation is not pleaded with particularity—10E does not allege the who, what, when, where, and how of the alleged misconduct. To the extent 10E is claiming that the Policy does not say what someone told 10E it said, such an allegation cannot survive as a matter of law: a policyholder is charged with reading his insurance policy and cannot sue his insurer because the policy does not say what he thought it said. *See John Hancock Mut. Life Ins. Co. v. Cohen*, 254 F.2d 417, 423 (9th Cir. 1958) ("[O]ne who is presented with an insurance policy has the duty to read it."); *Sarchett v. Blue Shield of Cal.*, 43 Cal. 3d 1, 15 (1987) (a court "must hold the insured bound by clear and conspicuous provisions in the policy even if evidence suggests that the insured did not read or understand them"); *Hadland v. NN Inv'rs Life Ins. Co.*, 24 Cal. App. 4th 1578, 1589 (1994) (affirming grant of nonsuit on fraud claim against an insurer because the insured, "having failed to read the policy and having accepted it without objection, cannot be heard to complain it was not what they expected");

*Hackethal v. Nat'l Cas. Co.*, 189 Cal. App. 3d 1102, 1112 (1987) (finding trial court erred in denying directed verdict for fraud claim against an insurer, because the insured received the policy and "should have" analyzed it: "It is a general rule that the receipt of a policy and its acceptance by the insured without an objection binds the insured as well as the insurer and *he cannot thereafter complain that he did not read it or know its terms*. It is a duty of the insured to read his policy." (emphasis in original)).

The second statement, though not pled with particularity, is a *prediction* of Travelers' coverage position. That is not a cognizable misrepresentation theory. *See Boris v. Wal-Mart Stores, Inc.*, 35 F. Supp. 3d 1163, 1170, 1172–73 (C.D. Cal. 2014), *aff'd*, 649 F. App'x 424 (9th Cir. 2016) (dismissing UCL claim because "[a] merchant's liability cannot be premised solely on a consumer's assumptions about a product"); *Tarmann v. State Farm Mut. Auto. Ins. Co.*, 2 Cal. App. 4th 153, 158 (1991) ("[P]redictions as to future events, or statements as to future action by some third party, are deemed opinions, and not actionable fraud." (quotation marks omitted)). Further, because this claim is not based on any actual statement by Travelers, let alone a false statement, 10E does not plead detrimental reliance. *See Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037, 1048 (9th Cir. 2017) (UCL requires economic loss caused by unfair business practice).

10E also does not allege that "members of the public are likely to be deceived" by any of Travelers' statements, an independent basis for dismissing this claim. *See W. Air Charter, Inc. v. Sojitz Corp.*, No. CV 18-7361 JGB (KSX), 2019 WL 4509304, at *14 (C.D. Cal. May 2, 2019) (quotation marks omitted).

***Not "Unfair."*** 10E also cannot assert a claim under the UCL's "unfair" prong because none of the challenged practices "threatens an incipient violation of an antitrust law, or violates the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the law, or otherwise significantly threatens or harms competition." *Cel-Tech*, 20 Cal. 4th at 187. Further, a plaintiff alleging an unfair business practice "must state with reasonable particularity the facts supporting"

the claim.  *Khoury v. Maly's of Cal., Inc.*, 14 Cal. App. 4th 612, 619 (1993).  Here, 10E pleads no facts supporting an unfair business practice claim; it is not unfair or deceptive to assert a valid contractual right.

    ***Not "Unlawful."***  Finally, 10E does not allege that Travelers violated any underlying statute or rule, as is required to state a claim for "unlawful" business practices.  *See Lazar v. Hertz Corp.*, 69 Cal. App. 4th 1494, 1505 (1999); FAC ¶¶ 54–55.  Rather, 10E challenges the interpretation and application of the Policy to its insurance claim—but that cannot constitute a UCL violation as a matter of law.  *See Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1043–44 (9th Cir. 2010) (UCL claim cannot be based on alleged breach of contract); *Sybersound Records, Inc. v. UAV Corp.*, 517 F.3d 1137, 1152 (9th Cir. 2008).

# V.     CONCLUSION

    For all of the reasons stated above, 10E has failed to state any claim upon which relief must be granted.  Further amendment would be futile, and 10E has already amended once.  Thus, Travelers respectfully requests that the Court dismiss the First Amended Complaint with prejudice under Federal Rule of Civil Procedure 12(b)(6).  *Cafasso*, 637 F.3d at 1058 ("[T]he district court's discretion to deny leave to amend is particularly broad where plaintiff has previously amended the complaint." (quotation marks and citation omitted)); *Gardner v. Martino*, 563 F.3d 981, 990 (9th Cir. 2009) (no abuse of discretion in denying leave to amend when amendment would be futile).[11]

Dated:  June 26, 2020              GIBSON, DUNN & CRUTCHER LLP

                            By:  */s/ Richard J. Doren*
                            Richard J. Doren, SBN 124666
                              rdoren@gibsondunn.com
                            Theodore J. Boutrous Jr., SBN 132099
                              tboutrous@gibsondunn.com

---

[11]  Travelers notes that some policyholders have petitioned for the creation of an industry-wide COVID-19 business interruption insurance MDL.  To the best of Travelers' knowledge, Plaintiff here has not sought to be part of that MDL.  Moreover, the hearing on the MDL petition is not scheduled until July 30.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Deborah L. Stein, SBN 224570
  dstein@gibsondunn.com
333 South Grand Avenue
Los Angeles, CA 90071-3197
Tel.: 213.229.7000
Fac.: 213.229.7520

Of Counsel:

ROBINSON & COLE LLP
Stephen E. Goldman (admitted *pro hac vice*)
  sgoldman@rc.com
Wystan M. Ackerman (admitted *pro hac vice*)
  wackerman@rc.com
280 Trumbull Street
Hartford, CT 06103
Tel.: 860.275.8200
Fac.: 860.275.8299

*Attorneys for Defendant The Travelers
Indemnity Company of Connecticut*