GERAGOS & GERAGOS
A PROFESSIONAL CORPORATION
LAWYERS
HISTORIC 10E
644 SOUTH FIGUEROA STREET
LOS ANGELES, CALIFORNIA 90017-3411
TELEPHONE (213) 625-3900
FACSIMILE (213) 232-3255
GERAGOS@GERAGOS.COM
MARK J. GERAGOS          SBN 108325
BEN J. MEISELAS          SBN 277412
MATTHEW M. HOESLY        SBN 289593

**DHILLON LAW GROUP INC.**
177 Post Street, Suite 700
San Francisco, California 94108
Telephone: (415) 433-1700
Facsimile: (415) 520-6593
HARMEET K DHILLON        (SBN: 207873)
harmeet@dhillonlaw.com
NITOJ P. SINGH           (SBN: 265005)
nsingh@dhillonlaw.com

Attorneys for Plaintiff 10E, LLC

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| 10E, LLC, a limited liability company,<br><br>Plaintiff,<br><br>vs.<br><br>THE TRAVELERS INDEMNITY COMPANY OF CONNECTICUT, a corporation;<br>ERIC GARCETTI, an individual; and DOES 1 to 25, inclusive,<br><br>Defendants. | Case No.: 2:20-cv-04418-SVW-AS<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANT TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**<br><br>**Hearing:**<br>Date:     August 31, 2020<br>Time:     1:30 p.m.<br>Place:    Courtroom 10A,<br>          350 West 1st Street,<br>          Los Angeles, CA 90012<br>Judge:    The Hon. Stephen V. Wilson |

## I. INTRODUCTION

As explained in Plaintiff's First Amended Complaint ("FAC"), Plaintiff has suffered business losses as a result of Defendant Garcetti's March 19, 2020 "Safer at Home" Order (the "Order"). Though Defendant Travelers Property Casualty Company of America ("Travelers") is clearly obligated to pay for these losses under the insurance policy it issued to Plaintiff (the "Policy"), it has refused to do so. Plaintiff is entitled to Civil Authority coverage because access to its business was prohibited by the Order. Plaintiff's losses thus result from the Order and not the coronavirus, which has never been detected at its property. Plaintiff is further entitled to Business Income and Extra Expense coverage because it experienced losses resulting from it being physically deprived of its property by the mandates of the Order. Because the allegations in the FAC sufficiently demonstrate Plaintiff's right to coverage and Defendant Travelers' wrongful refusal to pay, Defendant Travelers' instant Motion to Dismiss must be denied.

## II. STATEMENT OF FACTS

10E is an award-winning, full-service restaurant which includes an eatery and lounge area that provides an elevated Armenian and Lebanese cuisine to its customers in an elegantly sophisticated surrounding. The restaurant is open all three hundred and sixty-five days of the year and caters to large groups, individuals and happy-hour goers. (FAC ¶ 10.) On or about December 4, 2020, Defendant Travelers issued the Policy to Plaintiff, which provides coverage for losses, including but not limited to business income losses suffered at the 10E premises. (FAC ¶ 6, ECF No. 22.)

Plaintiff faithfully paid Policy premiums to Defendant Travelers specifically so that Travelers would provide "Business Income and Extra Expense Coverage" in the event of business closures by order of Civil Authority. (FAC ¶ 11, ECF No. 22.) Under the Policy, coverage is extended to actual loss of business income sustained and the actual, necessary, and reasonable extra expenses incurred when access to Plaintiff's premises is prohibited by order of Civil Authority. (FAC ¶ 12, ECF No.

22.)

In response to the global COVID-19 pandemic, Defendant Garcetti issued the Order, which directed all nonessential Los Angeles businesses to close. (FAC ¶ 18, ECF No. 22.) The Order caused a complete and total shutdown of Plaintiff's business operations, except for takeout and delivery services. (FAC ¶ 19, ECF No. 22.)

Currently under submission with this Court is Plaintiff's Motion to Remand based on lack of subject matter jurisdiction (ECF No. 29). Plaintiff maintains that remand is necessary because the inclusion of Defendant Eric Garcetti, a resident of California, defeats diversity, and further because the crux of Plaintiff's claims is grounded in state law. (ECF No. 29.)

**LEGAL STANDARD**

Travelers' Motion to Dismiss Plaintiff's Class Action Complaint fails as a matter of law and the Court should deny the motion in its entirety. Motions to dismiss under Federal Rules of Civil Procedure, Rule 12(b)(6) are disfavored and rarely granted. *See Gilligan v. Jamco Dev. Corp.,* 108 F.3d 246, 249 (9th Cir. 1997). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Emrich v. Touche Ross & Co.*, 846 F.2d 1190, 1198 (9th Cir. 1998). It is only under extraordinary circumstances that dismissal is proper under Rule 12(b)(6). *United States v. City of Redwood City*, 640 F.2d 963, 966 (9th Cir. 1981).

Federal Rule of Civil Procedure 12(b)(6) provides for dismissal of a complaint for "failure to state a claim upon which relief may be granted." To survive this motion, a plaintiff must allege "enough facts to state a claim to relief that is *plausible* on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (emphasis added). Courts must accept all allegations of fact in the complaint as true and construe them in the light most favorable to the plaintiffs. *Warren v. Fox Family Worldwide, Inc*. 328 F.3d 1136, 1139 (9th Cir. 2003). The Court must also assume that general allegations embrace the necessary, specific facts to support the claim. *Peloza v.*

*Capistrano Unified Sch. Dist.*, 37 F.3d 517, 521 (9th Cir. 1994). Once the pleading standard has been met, the complaint may proceed "even if it strikes a savvy judge that actual proof of those facts is improbable, and that recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556.

This "plausibility" requirement "does not impose a *probability* requirement at the pleading stage." *Id.* at 545 (emphasis added). A claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the *reasonable inference* that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), *citing Twombly*, 550 U.S. at 556 (emphasis added). However, "[t]he court should not sustain the demurrer without leave to amend if the complaint, liberally construed, can state a cause of action under any theory or if there is a reasonable possibility the defect can be cured by amendment." *McKell v. Washington Mut., Inc.*, 142 Cal.App.4th 1457, 1469 (2006).

Travelers essentially seeks to have Plaintiff plead and prove its causes of action in the Complaint. Travelers unreasonably demands Plaintiff plead all facts about which Plaintiff intends to present evidence of at trial, even those facts which Plaintiff will only be able to obtain through discovery and which will be developed during the pendency of this lawsuit. Travelers misapplies the appropriate standard. Under the well-established *Twombly* pleading standard, a plaintiff must only state "enough facts to state a claim to relief that is plausible on its face." *Twombly*, supra, 550 U.S. at 570 (2007). Under the *Iqbal* standard, "A claim has 'facial plausibility' if the plaintiff pleads facts that 'allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009); *Hemme v. Airbus*, S.A.S., No. 09-C-7239, 2010 WL 1416468 *4 (N.D. Ill., Apr. 1, 2010) (Plaintiffs are not required to explain "how they arrived at their factual allegations . . . a complaint must only contain enough facts to give the defendant fair notice of what the claim is and the grounds upon which it rests."). With the necessary allegations pled, in reviewing a complaint under Rule 12(b)(6), the court must assume

1 that general allegations embrace the necessary, specific facts to support them. *See Peloza*, *supra*, 37 F.3d at 521 (9th Cir. 1994). Plaintiff adequately and properly pleads all of the following causes of action.

In addition, the Federal pleading standard, "Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the…claim is and the grounds upon which it rests,'" *Twombly*, 550 U.S. at 545, *citing Conley v. Gibson*, 355 U.S. 41, 47 (1957). Rule 8 does not require "detailed factual allegations," but rather the "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." *Id.* As such, the Court must accept all factual allegations of the complaint as true and construe those facts, as well as the inferences from those facts, in the light most favorable to the Plaintiff. *See Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005). As described by the court in *Ashcroft v. Iqbal*, this tenet is "inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 663. Plaintiff's Complaint satisfies this standard, and thus, Traverler's Motion should be denied.

### III. ARGUMENT

#### A. Plaintiff Is Entitled to Civil Authority Coverage.

**1. Civil Authority Coverage Applies to Government Shutdowns that Impede the Public's Access to Plaintiff's Property.**

Defendant Travelers incorrectly cites to a policy exclusion for harm that results from a "LOSS DUE TO VIRUS OR BACTERIA." (D.'s Mem. of P. & A. in Support of Mot. to Dismiss, 6.) Plaintiff is not attempting to recover any losses from COVID-19 or its proliferation. Plaintiff is instead suing because of the economic losses that have resulted from Defendant Garcetti's Order, which prohibited the public's access to Plaintiff's property, consequently hurting Plaintiff's business.

A policy provision is ambiguous if it is susceptible to two or more reasonable constructions despite the plain meaning of its terms within the context of the policy as a whole. *See Foster–Gardner, Inc. v. National Union Fire Ins. Co.*, 18 Cal. 4th 857, 868 (1998). The Court may then invoke the principle that ambiguities are generally construed against the party who caused the uncertainty to exist (i.e., the insurer) to protect the insured's reasonable expectation of coverage. *Palmer v. Truck Ins. Exch.*, 21 Cal. 4th 1109, 1115 (1999).

As explained in the FAC, under the Policy, insurance is extended to apply to the actual loss of business income sustained, and the actual, necessary, and reasonable extra expenses incurred when access to the scheduled premises is specifically prohibited by order of Civil Authority. This additional coverage is identified as coverage under "Civil Authority" as part of the Policy's "Property Optional Coverages" section. The Policy is an all-risk policy, insofar as it provides that a covered cause of loss under the policy means direct physical loss or direct physical damage unless the loss is specifically excluded or limited in the Policy. (FAC ¶ 13.) The Policy's Civil Authority Coverage Section extends coverage to direct physical loss or damage that results from a Covered Cause of Loss to the Property in the immediate area of the "scheduled premises." (FAC ¶ 12.) The Policy provides coverage for losses resulting from "*action of civil authority that prohibits access to the described premises*." (Kupec Decl., Ex. 1, at 99.)

Defendant Travelers mischaracterizes the underlying facts and nature of Plaintiff's lawsuit by arguing that Civil Authority coverage does not apply to losses caused by or resulting from a virus. Plaintiff is not suing based on losses that stem from COVID-19. Plaintiff is suing instead to recover for losses that have flowed from Defendant Garcetti's Order that prohibited the public from accessing Plaintiff's business. In other words, had Defendant Garcetti not issued the Order, Plaintiff would not have sued.

Should the Court find that an ambiguity exists in the interpretation of the Policy language, then that ambiguity should be resolved against the drafter (i.e. Travelers).

## 2. Civil Authority Coverage Applies Because the Order "Prohibited Access" to Plaintiff's Premises.

Defendant Travelers attempts to confuse the issues in this case by suggesting that diners could access Plaintiff's business premises despite a total prohibition on sit-down dining by the Order. Courts have found that where the order of a civil authority requires an insured's premises to close, there has been a prohibition of access to the insured's business sufficient to trigger coverage for business losses. *Assurance Co. of Am. v. BBB Serv. Co.*, 265 Ga. App. 35 (2003) (county order to evacuate as Hurricane Floyd approached required closure of Plaintiff's restaurant); *S. Hosp., Inc. v. Zurich Am. Ins. Co.*, 393 F.3d 1137, 1141 (10th Cir. 2004).

The Order that occasioned this lawsuit restricted access to Plaintiff's premises by prohibiting the public from dining and congregating at the premises for many weeks. The Order mandated that all restaurants were to close all on-site service. As the Policy clearly recognizes, Plaintiff's business is categorized as "fine dining." (Kupec Decl., Ex. 1, at 76–77.) Thus, the essence of Plaintiff's business is to provide a luxurious dining experience from the dining room on its premises. Plaintiff procured the Policy to provide for coverage in the event that this core element of its business became suspended. Plaintiff's restaurant is simply not designed to provide only takeout and delivery services. The prohibition on serving guests in the bar and dining room of Plaintiff's restaurant essentially deprived Plaintiff of all ability to run its business as the business was designed. This prohibition of access to Plaintiff's physical premises had a disastrous effect on Plaintiff's staffing and revenue, which Plaintiff is still working to mitigate.

Additionally, as Plaintiff has already emphasized, any ambiguity that the Court may find in the Policy language ought to be resolved in Plaintiff's favor because Defendant Travelers drafted the Policy and was in the better position to resolve such

1  an ambiguity at the drafting stage. For these reasons, the Court should find that the
2  closure of Plaintiff's dining room and bar occasioned by the Order were prohibitions
3  of access to Plaintiff's premises sufficient to trigger Civil Authority coverage under
4  the Policy.

### B. Plaintiff Is Entitled to Business Income and Extra Expense Coverage Because the Order Caused Physical Loss of Its Property.

7  Defendant Garcetti's labeling of Plaintiff's business as nonessential resulted in loss of use of its dining room and other critical potions of its property, as these were shut down by the mandates of the Order. Plaintiff is thus entitled to Business Income and Extra Expense coverage.

11  The Policy provides that Defendant "will pay for direct physical loss of or damage to Covered Property . . . caused by or resulting from a Covered Cause of Loss." (Kupec Decl., Ex. 1, at 85.) "Covered Property" includes not only Plaintiff's building and fixtures, but also personal property owned by Plaintiff and used in its business. (Kupec Decl., Ex. 1, at 85.) The Business Income provision of the Policy states that Defendant will pay for loss of business income sustained by Plaintiff due to suspension of operations "caused by direct physical loss of or damage to property" caused by or resulting from a Covered Cause of Loss. (Kupec Decl., Ex. 1, at 86–87.) The Extra Expense provision of the Policy states that Defendant will pay for reasonable and necessary expenses incurred by Plaintiff during the period of restoration of its business "that [Plaintiff] would not have incurred if there had been no direct physical loss of or damage to property caused by or resulting from a Covered Cause of Loss." (Kupec Decl., Ex. 1, at 87.)

24  The Policy does not define the terms "direct physical loss of" or "damage to" as used in the above-quoted provisions, and thus these terms must be given "the meaning a layperson would ordinarily attach to [them]." *Garamendi v. Mission Ins. Co.*, 131 Cal. App. 4th 30, 42 (2005) (quoting *Waller v. Truck Ins. Exchange, Inc.*, 11 Cal.4th 1, 18 (1995)). Indeed, where ambiguity exists, the insurance policy is "to be

interpreted to 'protect the objectively reasonable expectations of the insured.'" *Id.* (quoting *AIU Ins. Co. v. Superior Court*, 51 Cal.3d 807, 828 (1990)). If ambiguity remains after this analysis, the policy provision in question must be interpreted against the insurer. *Id.*

In this case, Plaintiff bought and paid for the Policy to protect its restaurant business, which is unambiguously categorized as a "fine dining" business in the Policy. (*See* Kupec Decl., Ex. 1, at 75–76.) Defendant Garcetti's Order caused direct physical loss of and damage to Plaintiff's property in that it resulted in the loss of use of Plaintiff's dining room, bar, flatware, and other property integral to the fine dining experience. Defendant contends that Plaintiff is not entitled to coverage under the Policy because Plaintiff cannot demonstrate that its losses result from physical alteration of covered property. Defendant's argument is flawed, however, in that it impermissibly conflates the distinct "loss of" and "damage to" conditions for coverage included in the Policy.

In *Total Intermodal Servs. Inc. v. Travelers Prop. Cas. Co. of Am.*, No. CV 17-04908 AB (KSX), 2018 WL 3829767 (C.D. Cal. July 11, 2018), (a case notably filed against the very Defendant in this matter), the court denied Travelers' motion for summary judgment premised in part upon its argument that the plaintiff insured had not suffered physical alteration of covered property. *Total Intermodal*, 2018 WL 3829767, at *2–6. Total Intermodal, the plaintiff, was a freight forwarder that had mistakenly marked a shipping container as empty, causing the container (which was actually full of specialty printing equipment) to be returned to China. *Id.* at *1. The shipping container got held up in Chinese customs, and Total Intermodal's customer experienced such difficulty trying to get it released from customs that it ultimately chose to have the container's cargo destroyed. *Id.* Total Intermodal made a claim against its Travelers insurance policy, which provided coverage for "direct physical loss of or damage to Covered Property caused by or resulting from a Covered Cause of Loss." *Id.* at *2. Travelers denied the claim, arguing that the cargo in question did

not suffer physical damage while being handled by the insured, and that the loss of the cargo occurred in China, outside the coverage area. *Id.*

In denying Travelers' motion for summary judgment on Intermodal's breach of contract claim, the court determined that

> the "loss of" property contemplates that the property is misplaced and unrecoverable, without regard to whether it was damaged. Furthermore, to interpret "physical loss of" as requiring "damage to" would render meaningless the "or damage to" portion of the same clause, thereby violating a black-letter canon of contract interpretation—that every word be given a meaning.

*Id.* at *3 (citing Cal. Civ. Code § 1641; *Lyons v. Fire Ins. Exch.*, 161 Cal. App. 4th 880, 886 (2008)).

Notably, the *Total Intermodal* court distinguished *MRI Healthcare Ctr. Of Glendale, Inc. v. State Farm Gen. Ins. Co.*, 187 Cal. App. 4th 766, 779 (Ct. App. 2d Dist. 2010), a case on which Defendant relies heavily. In *MRI Healthcare*, the plaintiff was an MRI machine owner whose machine was insured under a policy providing for loss of income coverage resulting from "accidental direct physical loss to property." *MRI Healthcare*, 187 Cal. App. 4th at 770–71. The roof of the building in which the plaintiff's MRI machine was housed was damaged by storms, necessitating repairs by the plaintiff's landlord. *Id.* at 770. In order for the roof repairs to take place, the MRI machine needed to be demagnetized or "ramped down." *Id.* When the machine later failed to "ramp back up," the plaintiff sued its insurer after it had denied coverage for the costs of repairing the machine and for the loss of income the plaintiff had suffered while the machine was inoperable. *Id.* at 770–72.

In siding with the insurer, the *MRI Healthcare* court determined that (1) the storms were not the proximate cause of damage to the MRI machine, and (2) there was no covered loss under the insurance policy because the MRI machine's failure to

ramp back up had resulted from an inherent defect of the machine rather than a physical change brought about by some external force. *Id.* at 780.

Not only is this case distinguishable from *MRI Healthcare* in that a physical change in Plaintiff's property occurred (the closure of its dining room and bar) as the result of an external force (Defendant Garcetti's Order), but importantly, the policy here differs materially from the one at issue in *MRI Healthcare*. As the *Total Intermodal* court stated after considering *MRI Healthcare* and another case on which Travelers had attempted to rely, *Newman Myers Kreines Gross Harris, P.C. v. Great Northern Ins. Co.*, 17 F.Supp.3d 323 (S.D.N.Y. 2014):

> In *MRI*, the operative language was "direct physical loss to business personal property," and in *Newman*, the operative language was "direct physical loss or damage." But again, those phrases omit the preposition "of" present in the Coverage term here. Thus, contrary to Travelers's argument, *MRI* and *Newman* did not construe the coverage term "physical loss of" that is in issue here. In fact, *MRI* and *Newman* cut against Travelers: because the clauses on those cases differ from the Coverage clause here, it stands to reason that they also differ in meaning, such that "direct physical loss of" should be construed differently from "direct physical loss to" or "direct physical loss." The Court therefore rejects Travelers's proposed construction. Instead, the phrase "loss of" includes the permanent dispossession of something.

*Total Intermodal*, 2018 WL 3829767, at *4.

Here, the Policy uses the identical "direct physical loss of or damage to" language found in the policy at issue in *Total Intermodal*, which was also issued by Defendant Travelers. As explained in *Total Intermodal*, this language requires

coverage where there is deprivation of property even without physical change in the condition of the property. *Id.* at *3–4. As Plaintiff's FAC makes clear, Defendant Garcetti's Order resulted in a complete shutdown of its business, except for takeout or delivery operations. (FAC ¶ 18.) Plaintiff was thus deprived of the use of its dining room, bar, flatware, and other features synonymous with a fine dining experience, and is entitled to coverage for the business losses that resulted from this deprivation. Indeed, a reasonable insured in Plaintiff's position seeking a business interruption policy for a fine dining restaurant would have expected the Policy, which covers "physical loss of property" to provide coverage in the event of an occurrence resulting in Plaintiff's dining room, bar, and other key features being rendered inoperable.

Additionally, Defendant conspicuously ignores relevant case law from around the country which affirms that COVID-19 causes damage to property, further supporting the notion that "direct physical loss" is not limited to physical alteration to property.

For example, in its recent review of the constitutionality of similar orders issued by Pennsylvania Governor Tom Wolf, the Supreme Court of Pennsylvania recognized that the COVID-19 pandemic "qualifies as a 'natural disaster'" because it involves "substantial damage to property, hardship, suffering or possible loss of life." *Friends of Danny DeVito v. Wolf*, 227 A.3d 872, 887 (Pa. 2020)(emphasis added). The Pennsylvania Supreme Court further noted that "[t]he virus spreads primarily through person-to-person contact, has an incubation period of up to fourteen days, one in four carriers of the virus are asymptomatic, and the virus can live on surfaces for up to four days. **Thus, any location (including Petitioner's businesses) where two or more people can congregate is within the disaster area."** *Id*. at 889-90 (emphasis added).

The *DeVito* decision supports at least three critical arguments supporting the position that shuttered businesses have experienced losses caused by covered causes of loss. First, the virus causes "damage to property," which means not simply economic losses to property owners but property damage.

Second, if the COVID-19 pandemic is sufficiently similar to an earthquake, tornado or fire, so as to constitute a natural disaster triggering emergency executive powers, it must likewise be sufficiently similar to these occurrences to trigger coverage under insurance policies issued which have precisely these events in mind.

Third, the actual presence of the virus at an insured's property is not dispositive as to whether the insured's loss has been caused by property damage. As Defendant well knows, it expressly provided coverage for a shut-down order caused by Civil Authority even where the insured's premises had not been the epicenter of the damage. Thus, if a fire or earthquake or chemical spill causes such damage in a locale where Plaintiff's business sits, and the State issues a shut-down order that includes Plaintiff's business, there is coverage under the Policies. Similarly, where a virus or pandemic resident in areas where Plaintiff's business is located, resulting in a shut-down order, there is coverage.

Entire counties in which businesses operate have been deemed disaster areas. Due to the extraordinary communicability of the virus, its long incubation period and its ability to survive for up to four days on physical surfaces, the issue is not merely whether a particular location has been contaminated. Rather, the issue is whether a property has been rendered unusable by virtue of physical damage either at that location or in the broader disaster area in which it is located. Based on this reasoning there is virtually no place in the State of California that is not suffering losses caused by property damage. That is the very rationale for the shut down and stay-at-home orders. It is not whether the virus was or is at the insured's location that is the dispositive issue. The issue is whether the virus, so pervasive as to be presumed to be physically present almost everywhere, constitutes physical damage in those locations.

Indeed, the Third Circuit provided the following reasoning in finding coverage despite the lack of structural damage:

> When the presence of large quantities of asbestos in the air of a building is such as to make the structure uninhabitable and

> unusable, then there has been a distinct loss to its owner. However, if asbestos is present in components of a structure, but is not in such form or quantity as to make the building unusable, the owner has not suffered a loss. The structure continues to function – it has not lost its utility.

*Port Auth. Of New York & New Jersey v. Affiliated FM Ins. Co.*, 311 F. 3d 226, 236 (3d Cir. 2002).

Second, unseen forces and unconventional substances, some of which originate off-site, such as humidity, fumes, and odors, also satisfy this physical loss requirement. The following cases stand for the proposition that an insured may suffer physical loss from a contaminant or condition that causes changes to the property that cannot be seen or touched, causes no structural damage, and should apply to the raging virus that has contaminated the air we breathe.

Humidity: *Columbiaknit, Inc. v. Affiliated FM Ins. Co.*, No. Civ. 98-434-HU, 1999 WL 619100, at * 7 (D. Or. Aug. 4, 1999) (holding that garments and fabrics in a clothing facility had suffered "direct physical loss or damage" caused by mold and humidity demonstrated by persistent, pervasive odor).

Release of ammonia: *Gregory Packaging, Inc., v. Traveler's Prop. Cas. Co. of Am.*, No. 2:12-cv-04418, 2014 WL 6675934 at *5 (D.N.J. Nov. 25, 2014) (holding that release of ammonia in a juice packaging facility to constitute physical loss because "property can sustain physical loss or damage without experiencing structural alteration).

Gas fumes: *Widder v. Louisiana Citizens Prop. Ins. Corp.*, 2011-0196 (La. App. 3 Cir. 8/10/11); 82 So. 3d 294, 296, writ denied, 2011-2336 (La. 12/2/11) (intrusion of lead or gaseous fumes constitute a direct physical loss under insurance policy.)

Gases: *TRAVCO Ins. Co. Ward*, 715 F. Supp. 2d 699, 708 (E.D. Va. 2010) (4th Circ. 2013) (losses resulting from sulfuric gas released by drywall were covered because physical damage to the property is not necessary where it has been rendered unusable)(emphasis added); *Western Fire Ins. Co. v. First Presbyterian Church*, 165

- 13-

Colo. 34, 437 P. 2d 52 (1968) (finding gasoline vapors which rendered church uninhabitable constitutes physical loss, even where structural damage not present.)

Smell of cat urine: *Mellin v. N. Sec. Ins. Co., Inc.*, 115 A.3d 799, 805-06 (2015) (holding tangible physical alteration was not required to prove that a property was uninhabitable, thus smell of cat urine emanating from another condominium unit cause "direct physical loss" to the plaintiff's unit.)

These cases firmly show that courts around that country have focused on the inhabitability or loss off functionality of a building to find that there was a direct physical loss in situations where invisible, airborne particles render the breathing air within a building dangerous or noxious for whatever reason.

### C. Plaintiff is Entitled to its Requested Declarations.

For all the reasons explained above that Plaintiff can show it is entitled to coverage under the Policy's Civil Authority and/or Business Income and Extra Expense provisions, Plaintiff can show that it is entitled to the Declarations it seeks. Defendant argues that there is no cognizable legal theory or set of facts available to entitle Plaintiff to the Declaratory Relief it seeks. However, as Plaintiff has already demonstrated that it is entitled to coverage under the Policy's provisions, Plaintiff can still show that it is entitled to declaratory relief and Travelers' argument fails.

### IV. CONCLUSION

For all of the reasons stated above, Plaintiff respectfully requests that the Court deny Defendant Travelers' Motion to Dismiss. Alternatively, if the Court sees fit to grant Defendant's Motion in whole or in part, Plaintiff respectfully requests that it be given leave to amend.

| | | |
|---|---|---|
| 1 | DATED:  August 10, 2020 | **GERAGOS & GERAGOS, APC** |
| 2 | | **DHILLON LAW GROUP INC.** |
| 4 | | By:   /s/ Mark J. Geragos |
| 5 | | MARK J. GERAGOS |
| 6 | | BEN J. MEISELAS |
|   | | MATTHEW M. HOESLY |
| 7 | | HARMEET K DHILLON |
| 8 | | NITOJ P. SINGH |
|   | | *Attorneys for Plaintiff*, 10 E LLC |

- 15-