**GIBSON, DUNN & CRUTCHER LLP**
THEODORE J. BOUTROUS JR., SBN 132099
   tboutrous@gibsondunn.com
RICHARD J. DOREN, SBN 124666
   rdoren@gibsondunn.com
DEBORAH L. STEIN, SBN 224570
   dstein@gibsondunn.com
333 South Grand Avenue
Los Angeles, CA 90071-3197
Tel.: 213.229.7000
Fac.: 213.229.7520

**ROBINSON & COLE LLP**
STEPHEN E. GOLDMAN (admitted *pro hac vice*)
   sgoldman@rc.com
WYSTAN M. ACKERMAN (admitted *pro hac vice*)
   wackerman@rc.com
280 Trumbull Street
Hartford, CT 06103
Tel.: 860.275.8200
Fac.: 860.275.8299

Attorneys for Defendant The Travelers
Indemnity Company of Connecticut

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| 10E, LLC, a limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>THE TRAVELERS INDEMNITY COMPANY OF CONNECTICUT, a corporation; ERIC GARCETTI, an individual; and DOES 1 to 25, inclusive,<br><br>Defendants. | CASE NO. 2:20-cv-04418-SVW-AS<br><br>**DEFENDANT THE TRAVELERS INDEMNITY COMPANY OF CONNECTICUT'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS FIRST AMENDED COMPLAINT**<br><br><u>Hearing</u>:<br><br>Date:    August 31, 2020<br>Time:    1:30 p.m.<br>Place:    Courtroom 10A<br>          First Street Courthouse<br>          350 W. First Street<br>          Los Angeles, CA 90012<br>Judge:   Stephen V. Wilson |

# MEMORANDUM OF POINTS AND AUTHORITIES

## TABLE OF CONTENTS

Page

I.  INTRODUCTION.................................................................................... 1

II. ARGUMENT ......................................................................................... 3

A.  10E's Opposition Confirms That It Is Not Entitled to Civil
Authority Coverage as a Matter of Law ............................................... 3

1.  The Policy's Virus Exclusion Bars Coverage for
Coronavirus-Related Losses............................................... 3

2.  Civil Authority Coverage Does Not Apply Because the Order
Did Not "Prohibit Access" to the Premises ................................ 7

B.  10E's Opposition Confirms That Business Income and Extra
Expense Coverage Also Does Not Apply as a Matter of Law ................ 9

1.  10E Concedes That the FAC Pleads a Temporary Limitation
of Use, Which Is Not "Direct Physical Loss of or Damage to
Property" as a Matter of Law ....................................... 9

2.  Plaintiff Improperly Asks This Court to Deviate from
Ordinary Rules of Contract Construction.................................15

C.  Dismissal of the First Cause of Action Is Proper Because Plaintiff
Is Not Entitled to Coverage as a Matter of Law ...................................17

D.  Dismissal of the Second Cause of Action Is Proper Because
Plaintiff Is Not Entitled to Coverage as a Matter of Law ......................17

E.  Dismissal of the Third Cause of Action Is Proper Because Plaintiff
Is Not Entitled to Coverage as a Matter of Law ...................................18

F.  Dismissal of the Fourth Cause of Action Is Proper Because Plaintiff
Pleads No Fraudulent, Unfair, or Unlawful Conduct............................18

III. CONCLUSION......................................................................................19

Gibson, Dunn &
Crutcher LLP

Defendant The Travelers Indemnity Company of
Connecticut's Reply in Support of Its Motion to
Dismiss the First Amended Complaint

i

2:20-cv-04418-SVW-AS

# TABLE OF AUTHORITIES

Page(s)

## Cases

*Assurance Co. of America v. BBB Service Co.*,
   265 Ga. App. 35 (2003) ................................................................. 8

*Atlas Assurance Co. v. McCombs Corp.*,
   146 Cal. App. 3d 135 (1983) ........................................................4, 5

*Banner v. CFM Corp.*,
   No. CV 09-7525 PA, 2010 WL 11597350 (C.D. Cal. May 3, 2010) ....................19

*Broam v. Bogan*,
   320 F.3d 1023 (9th Cir. 2003) ........................................................18

*Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*,
   637 F.3d 1047 (9th Cir. 2011) ........................................................18

*Columbiaknit, Inc. v. Affiliated FM Ins. Co.*,
   No. Civ. 98-434-HU, 1999 WL 619100 (D. Or. Aug. 4, 1999) ............................14

*Commercial Union Ins. Co. v. Sponholz*,
   866 F.2d 1162 (9th Cir. 1989) ........................................................10

*Diesel Barbershop, LLC v. State Farm Lloyds*,
   No. 5:20-CV-461-DAE,  2020 WL 4724305 (W.D. Tex. Aug. 13,
   2020) ................................................................. 3, 4, 12

*Doyle v. Fireman's Fund Insurance Co.*,
   21 Cal. App. 5th 33 (2018) ........................................................10

*Fireman's Fund Ins. Co. v. Superior Court*,
   65 Cal. App. 4th 1205 (1997) ........................................................ 5

*Friends of Danny DeVito v. Wolf*,
   227 A.3d 872 (Pa. 2020) ........................................................13

*Gardner v. Martino*,
   563 F.3d 981 (9th Cir. 2009) ........................................................2, 18

*George v. Auto. Club of S. California*,
   201 Cal. App. 4th 1112 (2011) ........................................................ 5

Gibson, Dunn &
Crutcher LLP

Defendant The Travelers Indemnity Company of
Connecticut's Reply in Support of Its Motion to
Dismiss the First Amended Complaint

ii

2:20-cv-04418-SVW-AS

**TABLE OF AUTHORITIES**
*(continued)*

Page(s)

*Gregory Packaging, Inc. v. Travelers Prop. Cas. Co. of Am.*,
2014 WL 6675934 (D.N.J. Nov. 25, 2014) ....................................................14

*Grossman v. Valverde*,
No. SACV 13-461-DDP CW, 2014 WL 722035 (C.D. Cal. Feb. 20,
2014) ..............................................................................................................18

*Harry's Cadillac-Pontiac-GMC Truck Co. v. Motors Ins. Co.*,
486 S.E.2d 249 (N.C. Ct. App. 1997) ..................................................... 11, 15

*Hartford Ins. Co. of Midwest v. Mississippi Valley Gas Co.*,
181 F. App'x 465 (5th Cir. 2006) .................................................................12

*Imber-Gluck v. Google, Inc.*,
No. 5:14-CV-01070-RMW, 2014 WL 3600506 (N.D. Cal. July 21,
2014) ............................................................................................................. 5

*J O. Emmerich & Assocs., Inc. v. State Auto Ins. Cos.*,
No. 3:06CV00722-DPJ-JCS, 2007 WL 9775576 (S.D. Miss. Nov. 19,
2007) ............................................................................................................11

*Love v. Fire Ins. Exch.*,
221 Cal. App. 3d 1136 (1990) ......................................................................17

*Mellin v. No. Sec. Ins. Co., Inc.*,
115 A.3d 799 (N.H. 2015) ...........................................................................14

*Mosley v. Pac. Specialty Ins. Co.*,
49 Cal. App. 5th 417 (2020)......................................................................1, 4

*Ne. Ga. Heart Ctr., P.C. v. Phx. Ins. Co.*,
2014 WL 12480022 (N.D. Ga. May 23, 2014) ..............................................11

*Newman Myers Kreines Gross Harris, P.C. v. Great N. Ins. Co.*,
17 F. Supp. 3d 323 (S.D.N.Y. 2014)..............................................................15

*Palmer v. Truck Ins. Exch.*,
21 Cal. 4th 1109 (1999) ...............................................................................15

*Paradies Shops, Inc. v. Hartford Fire Ins. Co.*,
No. 1:03-CV-3154-JEC, 2004 WL 5704715 (N.D. Ga. Dec. 15, 2004) ................. 7

## TABLE OF AUTHORITIES
### (*continued*)

Page(s)

*Pentair, Inc. v. Am. Guarantee & Liab. Ins. Co.*,
    400 F.3d 613 (8th Cir. 2005) ...................................................................10

*Personal Elec. Transps., Inc. v. Office of U.S. Tr.*,
    313 Fed. App'x 51 (9th Cir. 2009) .........................................................18

*Phila. Parking Auth. v. Fed. Ins. Co.*,
    385 F. Supp. 2d 280 (S.D.N.Y. 2005) ................................................7, 15

*Port Auth. Of New York & New Jersey v. Affiliated FM Ins. Co.*,
    311 F.3d 226 (3d Cir. 2002) ....................................................................14

*Prime All. Grp., Ltd. V. Hartford Fire Ins. Co.*,
    No. 06-22535-CIV, 2007 WL 9703576 (S.D. Fla. Oct. 19, 2007) .......... 6

*Roundabout Theatre Co. v. Cont'l Cas. Co.*,
    751 N.Y.S.2d 4 (N.Y. App. Div. 2002) ...................................................15

*Schneider Equip., Inc. v. Travelers Indem. Co. of Ill.*,
    No. CIV. 04-1482-HA, 2006 WL 2850465 (D. Or. Sept. 29, 2006) ......16

*Silva v. U.S. Bancorp*,
    No. 5:10-01854, 2011 WL 7096576 (C.D. Cal. Oct. 6, 2011) ...............18

*Syufy Enters. v. The Home Ins. Co. of Ind.*,
    No. 94-0756, 1995 WL 129229 (N.D. Cal. Mar. 21, 1995) ................7, 8

*Titan Corp. v. Aetna Cas. & Sur. Co.*,
    22 Cal. App. 4th 457 (1994) ....................................................................17

*Torres v. Nationstar Mortg. LLC*,
    No. EDCV 16-302-JFW, 2016 WL 10988576 (C.D. Cal. Apr. 8, 2016) ...........2, 19

*Total Intermodal Servs. Inc. v. Travelers Prop. Cas. Co. of Am.*,
    Case No. CV17-04908AB(KSx),  2018 WL 3829767 (C.D. Cal. July
    11, 2018) ..............................................................................................2, 13

*TRAVCO Ins. Co. v. Ward*,
    715 F. Supp. 2d 699 (E.D. Va. 2010) ......................................................14

Defendant The Travelers Indemnity Company of
Connecticut's Reply in Support of Its Motion to
Dismiss the First Amended Complaint

iv

2:20-cv-04418-SVW-AS

**TABLE OF AUTHORITIES**
(*continued*)

Page(s)

*Waller v. Truck Ins. Exch., Inc.*,
  11 Cal. 4th 1 (1995)........................................................................17

*Ward Gen. Ins. Servs., Inc. v. Employers Fire Ins. Co.*,
  114 Cal. App. 4th 548 (2004).............................................................10

*Western Fire Ins. Co. v. First Presbyterian Church*,
  437 P.2d 52 (Colo. 1968)...................................................................14

*Widder v. Louisiana Citizens Prop. Ins. Corp.*,
  2011-0196 (La. App. 4 Cir. 8/10/11), 82 So. 3d 294, *writ denied*, 2011-
  2336 (La. 12/2/11), 76 So. 3d 1179.....................................................14

**Statutes**

35 Pa.C.S. § 7101, *et seq.*................................................................13

35 Pa.C.S. § 7102............................................................................14

Cal. Bus. & Prof. Code § 17200............................................................18

Cal. Civ. Code § 1641.......................................................................17

**Other Authorities**

https://www.lamayor.org/COVID19Orders ....................................................6

Gibson, Dunn &
Crutcher LLP

Defendant The Travelers Indemnity Company of
Connecticut's Reply in Support of Its Motion to
Dismiss the First Amended Complaint

v

2:20-cv-04418-SVW-AS

I.     INTRODUCTION

Plaintiff 10E, LLC ("Plaintiff" or "10E") purchased an insurance policy issued by The Travelers Indemnity Company of Connecticut ("Travelers") with an explicit virus exclusion. After suffering alleged losses due to the Coronavirus Safer at Home order (the "Order"), Plaintiff now asks the Court to write the virus exclusion out of the Policy and force Travelers to reimburse Plaintiff for losses that Travelers never agreed to insure. But the virus exclusion plainly applies to preclude coverage as a matter of law, and the Court should decline Plaintiff's invitation to overcomplicate a straightforward issue. For this reason, as well as Plaintiff's failure to plead facts that plausibly implicate coverage even in the absence of the virus exclusion, the Court should grant Travelers' Motion to Dismiss.

*First*, Plaintiff's attempt to avoid the Policy's unambiguous virus exclusion fails as a matter of law. The virus exclusion clearly states that Travelers "will not pay for loss or damage caused by or resulting from any virus." *See* Kupec Decl., Ex. 1 at 247. The Opposition argues that Plaintiff's losses were not caused by the Coronavirus but instead by the Order. But, as Plaintiff alleges in the FAC, the Order was issued to slow the spread of the Coronavirus. Under California law, the Order cannot be divorced from the reason it was issued. *See, e.g.*, *Mosley v. Pac. Specialty Ins. Co.*, 49 Cal. App. 5th 417, 424 (2020) (finding court must use "common sense" to determine whether a loss "results from" an event and that the term "resulting from" is "generally equated . . . with 'origination, growth or flow from the event'") (citation omitted).

*Second*, Plaintiff has not alleged facts showing an entitlement to Civil Authority coverage. The Civil Authority provision can be implicated only by a civil authority action that, among other things, was "due to direct physical loss of or damage to property . . . caused by or resulting from a Covered Cause of Loss." Kupec Decl., Ex. 1 at 121. Here, there is no dispute that (1) the civil authority actions were caused by or resulting from the Coronavirus and (2) the Coronavirus is not a Covered Cause of Loss. Moreover, the civil authority order must "prohibit access" to the insured's

premises, and Plaintiff fails to cite a single case holding that limiting the use of property satisfies this requirement. As set forth in Travelers' opening memorandum, as a matter of law, the Order did not "prohibit access" to the restaurant because the Order allowed access to the restaurant so that 10E could prepare and sell food for takeout and delivery.

*Third*, in addition to the applicable virus exclusion, Plaintiff has not alleged facts showing an entitlement to Business Income and Extra Expense coverage, which insures certain losses sustained due to a necessary suspension of operations "caused by direct physical loss of or damage to property at the described premises." Kupec Decl., Ex. 1 at 109. Plaintiff identifies no facts pleaded that can be construed as showing a "direct physical loss of or damage to property." Rather, Plaintiff argues—though does not plead—that its inability to use its dining room satisfies this requirement. But temporary loss of use cannot reasonably be construed as "direct physical loss of or damage to property," as Judge Birotte recognized in the *Total Intermodal* case on which Plaintiff principally relies. *See Total Intermodal Servs. Inc. v. Travelers Prop. Cas. Co. of Am.*, Case No. CV17-04908AB(KSx), 2018 WL 3829767, at *3 (C.D. Cal. July 11, 2018) (holding that "the '*loss of*' property contemplates that the property is misplaced and unrecoverable").

The Court should dismiss the First Amended Complaint ("FAC") with prejudice. Given the nature of Plaintiff's alleged losses and the express terms of the Policy, Plaintiff has not stated and cannot state a claim. Plaintiff has already amended its complaint once, and Plaintiff's Opposition does not identify any new facts that it could allege if given leave to amend, thus dismissal with prejudice is warranted. *See Gardner v. Martino*, 563 F.3d 981, 990 (9th Cir. 2009) (no abuse of discretion in denying leave to amend when amendment would be futile); *Torres v. Nationstar Mortg. LLC*, No. EDCV 16-302-JFW (SPx), 2016 WL 10988576, at *2 (C.D. Cal.

Gibson, Dunn &
Crutcher LLP

Defendant The Travelers Indemnity Company of
Connecticut's Reply in Support of Its Motion to
Dismiss the First Amended Complaint

2

2:20-cv-04418-SVW-AS

Apr. 8, 2016) (dismissing case with prejudice when plaintiff "failed to allege any facts in his Opposition that indicate[d] leave to amend would not be futile").

## II.    ARGUMENT

### A.    10E's Opposition Confirms That It Is Not Entitled to Civil Authority Coverage as a Matter of Law

#### 1.    The Policy's Virus Exclusion Bars Coverage for Coronavirus-Related Losses

The Policy contains an express virus exclusion that applies to all property coverages, including Civil Authority. *See* Kupec Decl., Ex. 1 at 247 ("We will not pay for loss or damage caused by or resulting from any virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease."). The Policy's Civil Authority provision requires, as an express prerequisite to coverage, direct physical loss of or damage to property at a non-insured location within 100 miles of the insured premises "*caused by or resulting from a Covered Cause of Loss.*" Kupec Decl., Ex. 1 at 121. Plaintiff does not dispute that Coronavirus is a "virus" within the meaning of the virus exclusion, and therefore not a "Covered Cause of Loss." Accordingly, Plaintiff's claim for coverage under the Policy's Civil Authority provision fails as a matter of law, because Plaintiff's alleged "physical loss of . . . property" was, based on the facts alleged, caused by an excluded, rather than a covered, cause of loss (*i.e.*, the Coronavirus).

Plaintiff cannot avoid the virus exclusion by arguing that the disruption of its restaurant business was caused by the Order issued to slow the spread of the Coronavirus, not the Coronavirus itself. Indeed, this argument was recently rejected in in one of the first decisions to interpret a virus exclusion in the context of the COVID-19. In *Diesel Barbershop, LLC v. State Farm Lloyds*, No. 5:20-CV-461-DAE, 2020 WL 4724305 (W.D. Tex. Aug. 13, 2020), the plaintiffs argued, as 10E does here, that their losses were caused by civil authority orders rather than by the Coronavirus. *Id.*

Gibson, Dunn &
Crutcher LLP

Defendant The Travelers Indemnity Company of
Connecticut's Reply in Support of Its Motion to
Dismiss the First Amended Complaint

3

2:20-cv-04418-SVW-AS

*1.  The court expressly rejected this argument, finding that, as here, "Plaintiffs have pleaded that COVID-19 is in fact the reason for the Orders being issued and the underlying cause of Plaintiffs' alleged losses." *Id*. at *6.  In dismissing the case, the *Diesel Barbershop* court concluded that "the Orders only came about sequentially as a result of the COIVD-19 virus spreading rapidly throughout the community[,]" "[t]hus, it was the presence of COVID-19 in Bexar County and in Texas that was the primary root cause of Plaintiffs' businesses temporarily closing."[1] *Id*.  The court also rejected the plaintiffs' argument that the virus exclusion was ambiguous.  *Id*.  The same result is warranted here.

California courts evaluating policy exclusions foreclosing coverage for losses "caused by or resulting from" specified non-covered risks have found the provisions unambiguous and applied their plain meaning.  *See, e.g.*, *Atlas Assurance Co. v. McCombs Corp.*, 146 Cal. App. 3d 135, 149 (1983).  "The term 'resulting from' broadly links a factual situation with the event creating liability and connotes only a minimal causal connection or incidental relationship."  *Mosley*, 49 Cal. App. 5th at 424 (citation and internal quotation marks omitted).  It is "generally equated" with "origination, growth or flow from the event."  *Id*. (citations omitted).  In *Mosley*, the insurance policy excluded losses "resulting from any manufacturing, production or operation, engaged in . . . [t]he growing of plants."  *Id*. at 423.  Applying "common sense," the court found this exclusion applied to fire losses where alterations to a property's electrical system were made to power a marijuana growing operation.  *Id*. at 424 (concluding the losses "resulted from" growing plants because there was a causal connection between growing marijuana, the fire, and the resulting loss).

---

[1]  While the virus exclusion in *Diesel Barbershop* included prefatory language that is not present in 10E's Policy, that language was not essential to the outcome because the court concluded that the virus was the "underlying cause" and the "primary root cause" of the loss.

Gibson, Dunn & Crutcher LLP

Defendant The Travelers Indemnity Company of Connecticut's Reply in Support of Its Motion to Dismiss the First Amended Complaint

4

2:20-cv-04418-SVW-AS

Here, "common sense" compels a finding that the alleged losses resulted from the Coronavirus. To adopt Plaintiff's theory that the Order can be divorced from its purpose would render the virus exclusion illusory as it relates to Civil Authority coverage.[2] A virus cannot, in and of itself, prohibit access to a property. Rather, some form of human intervention (such as by government order or business decision) is required whenever a virus causes a business income or extra expense loss. Plaintiff's argument thus "strains reason" and requires "precisely the opposite" of the plain language of the virus exclusion, which unambiguously precludes coverage for any loss, including losses "caused by or resulting from" a virus. *See Atlas Assurance Co. v. McCombs Corp.*, 146 Cal. App. 3d 135, 149 (1983). Indeed, Plaintiff does not identify any specific terms that it contends are ambiguous. *See George v. Auto. Club of S. California*, 201 Cal. App. 4th 1112, 1128 (2011) (affirming dismissal on pleadings and noting plaintiff had "not identified a particular term or specific words in the policy that he claims have a meaning different from their ordinary meaning"); *Imber-Gluck v. Google, Inc.*, No. 5:14-CV-01070-RMW, 2014 WL 3600506, at *4 (N.D. Cal. July 21, 2014) (granting motion to dismiss where non-moving party did not allege any specific terms present in the agreement were ambiguous); *see also Fireman's Fund Ins. Co. v. Superior Court*, 65 Cal. App. 4th 1205, 1212–13 (1997) (a court "will not strain to create an ambiguity where none exists or indulge in tortured constructions to divine some theoretical ambiguity in order to find coverage where none was contemplated"). Such a result would "rewrite" the Policy and improperly bind Travelers "to a risk that it did not contemplate and for which it has not been paid." *Id.* (internal quotation marks omitted).

Plaintiff's own allegations demonstrate that the Order was issued to protect against the Coronavirus. *See, e.g.*, FAC ¶ 18 ("Defendant Garcetti's Order specifically

---

[2] The virus exclusion expressly states that it applies to Civil Authority coverage. *See* Kupec Decl., Ex. 1 at 247.

Gibson, Dunn & Crutcher LLP

Defendant The Travelers Indemnity Company of Connecticut's Reply in Support of Its Motion to Dismiss the First Amended Complaint

5

2:20-cv-04418-SVW-AS

referenced that it was being issued based on the dire risks of exposure with the contraction of COVID-19 and evidence of physical damage to property."); *id.* ¶ 16 ("the Coronavirus is a cause of real physical loss and damage"); *id.* ¶ 24 (First Cause of Action, pp. 6-7) (seeking declaration that Policy provides coverage for civil authority closures "due to physical loss or damage from the Coronavirus"); *id.* ¶ 22 (alleging Plaintiff shut down its business because "employees have refused to work out of fear of contracting the novel Coronavirus"). This connection is confirmed by the Order itself, which expressly references the need to take measures to slow the spread of the "COVID-19 virus."[3] Indeed, in its Opposition, Plaintiff admits that the Order was issued "[i]n response to the global COVID-19 pandemic." Opp. at 2.

Under the Policy's express terms, the Covered Cause of Loss must cause the direct physical loss of or damage to property that results in the civil authority action, not vice versa. The Order cannot trigger Civil Authority coverage because two separate exclusions in the Policy specifically exclude direct physical loss of or damage to property caused by the Order.[4] Plaintiff's interpretation, which is that the Order caused the direct physical loss of or damage to property, reads the Civil Authority provision backwards. *See Prime All. Grp., Ltd. V. Hartford Fire Ins. Co.*, No. 06-22535-CIV, 2007 WL 9703576, at *4 (S.D. Fla. Oct. 19, 2007) (explaining that civil authority order could not be a covered cause of loss).

Accordingly, Plaintiff provides no basis for avoiding application of the clear, unambiguous virus exclusion.

---

[3]  *See* https://www.lamayor.org/COVID19Orders.

[4]  The Policy excludes "loss or damage caused by or resulting from . . . Acts or decision, including the failure to act or decide, of any person, group, organization or governmental body." Kupec Decl., Ex. 1 at 131 (emphasis added). And the Ordinance or Law exclusion provides that "[w]e will not pay for loss or damage caused directly or indirectly by . . . [t]he enforcement of any ordinance or law . . . [r]egulating the construction, use or repair of any property." Kupec Decl., Ex. 1 at 128.

Gibson, Dunn & Crutcher LLP

Defendant The Travelers Indemnity Company of Connecticut's Reply in Support of Its Motion to Dismiss the First Amended Complaint

6

2:20-cv-04418-SVW-AS

2.      **Civil Authority Coverage Does Not Apply Because the Order Did Not "Prohibit Access" to the Premises**

In addition to being excluded by the virus exclusion, Plaintiff's claim for Civil Authority coverage also fails because the Order does not "prohibit access" to Plaintiff's restaurant, as required under the Policy and black-letter insurance law. To the contrary, as Plaintiff does not dispute, the Order expressly permits take-out and delivery service.

Plaintiff contends that because it is a "fine dining" restaurant, the Order "deprived" it of "all ability to run its business." Opp. at 6, 8, 11. But that is not the test under the Policy or governing law. The Policy applies only when a civil authority order actually "prohibits *access*." Courts have uniformly held that a voluntary closure or a limitation merely restricting access or otherwise impacting a business is insufficient as a matter of law. *Syufy Enters. v. The Home Ins. Co. of Ind.*, No. 94-0756, 1995 WL 129229, at *2 (N.D. Cal. Mar. 21, 1995) (curfews imposed during Rodney King riots, although practically preventing people from attending movies, did not "deny access to a Syufy theater"); *see also* Mot. at 12–15. Even where civil authority orders hinder business operations, courts do not find coverage absent a total prohibition of access to the business premises—which Plaintiff does not allege here.

For example, in *Philadelphia Parking Authority. v. Federal Insurance Co.*, airport garages were not entitled to civil authority coverage when the FAA grounded air traffic, even though the order "obviated the need for Plaintiff's parking services." 385 F. Supp. 2d 280, 289 (S.D.N.Y. 2005); *see also Paradies Shops, Inc. v. Hartford Fire Ins. Co.*, No. 1:03-CV-3154-JEC, 2004 WL 5704715, at *7 (N.D. Ga. Dec. 15, 2004) (FAA order did not trigger coverage for airport gift shops, even though customers could not fly). Likewise, in *Syufy Enterprises*, a theater operator that canceled showings when the public was under curfew was not entitled to coverage

Gibson, Dunn &
Crutcher LLP

Defendant The Travelers Indemnity Company of
Connecticut's Reply in Support of Its Motion to
Dismiss the First Amended Complaint

7

2:20-cv-04418-SVW-AS

despite its customers' inability to attend showings during curfew hours. *Syufy Enters.*, 1995 WL 129229, at *1–2.

Similarly, here, the hindering of Plaintiff's ability to conduct business as usual does not constitute a prohibition of access, as is required to potentially trigger Civil Authority coverage under its Policy. There is no "question of fact" to be resolved here, as Plaintiff contends—only a question of law on which Plaintiff has cited no supporting authority from any jurisdiction.

That Plaintiff was expressly permitted to continue to operate for a limited purpose distinguishes this case from Plaintiff's primary authority, *Assurance Co. of America v. BBB Service Co.*, 265 Ga. App. 35 (2003) (cited at Opp. at 6). Like Plaintiff, the insured in *BBB* was a restaurant owner, but *BBB*'s restaurants (unlike Plaintiff's) were all closed due to an evacuation order. *Id.* at 36. The parties stipulated that "[p]roperty damage was occurring throughout the effective term of the evacuation order where hurricane winds [a covered cause of loss] were making landfall," and the court found that "a basis for the evacuation order was actual damage to property other than the insured premises." *Id.*

Indeed, Plaintiff's allegations are more akin to *Southern Hospitality*, the only other authority Plaintiff cites to support its "prohibition of access" argument. Opp. at 6. *Southern Hospitality* rejected a civil authority claim in the wake of September 11th because an FAA order had only "stopped airplanes from flying"—it "*did not close*" the insureds' hotels or prohibit access to them. 393 F.3d at 1141 (emphasis added). By comparison here, although the Order may have prohibited Plaintiff from offering dine-in services, it did not *close* Plaintiff's restaurant or prohibit it from operating, let alone bar access to Plaintiff's premises.

Gibson, Dunn & Crutcher LLP

Defendant The Travelers Indemnity Company of Connecticut's Reply in Support of Its Motion to Dismiss the First Amended Complaint

8

2:20-cv-04418-SVW-AS

**B.      10E's Opposition Confirms That Business Income and Extra Expense Coverage Also Does Not Apply as a Matter of Law**

**1.      10E Concedes That the FAC Pleads a Temporary Limitation of Use, Which Is Not "Direct Physical Loss of or Damage to Property" as a Matter of Law**

As an initial matter, Plaintiff's claim for Business Income and Extra Expense coverage fails for the same reason that its claim for Civil Authority coverage fails: the Policy excludes all coverage for losses due to "any virus," and all of Plaintiff's alleged losses were caused by or result from the Coronavirus. The virus exclusion expressly applies to Business Income and Extra Expense. *See* Kupec Decl., Ex. 1 at 247; Mot. at 14–16.

Even if Plaintiff could somehow avoid application of the virus exclusion (and it cannot), the Policy's Business Income and Extra Expense provisions provide coverage only for "direct physical loss of or damage to property" at an insured premises. Kupec Decl., Ex. 1 at 121. To satisfy this requirement, Plaintiff argues that the Order "resulted in the *loss of use* of Plaintiff's dining room, bar, flatware, and other property integral to the fine dining experience." Opp. at 8 (emphasis added). Under well-settled law, Plaintiff's alleged "loss"—which is nothing more than a limitation on use—is not "*direct physical* loss . . . of property," as required by the Policy.

Here, no property was lost—such as if it were stolen, burned down, or blown away in a tornado. Plaintiff argues that it was "deprived" "of the use of its dining room, bar, flatware, and other features synonymous with a fine dining experience." Opp. at 11. But Plaintiff's restaurant is in the same *physical* condition it was in when the Order took effect. Nothing physical is alleged to have happened to Plaintiff's property. Plaintiff does not allege any facts showing that there was a "direct physical loss of or damage to property" at its insured premises within any reasonable meaning of those words.

Gibson, Dunn & Crutcher LLP

Defendant The Travelers Indemnity Company of Connecticut's Reply in Support of Its Motion to Dismiss the First Amended Complaint

9

2:20-cv-04418-SVW-AS

Instead, Plaintiff alleges only a *financial* loss, which is not "direct physical loss of or damage to property" as a matter of law. Plaintiff admits that it is "suing because of the economic losses that have resulted" from the Order. Opp. at 4. The California Court of Appeal's decision in *Doyle v. Fireman's Fund Insurance Co.*, 21 Cal. App. 5th 33 (2018), is instructive. In *Doyle*, a wine collector attempted to recover under a property insurance policy for counterfeit wine he was sold by a fraudster who filled empty wine bottles with wine that was neither rare nor vintage and attached fraudulent labels to the bottles. *Id.* at 36. As the Court of Appeal explained, the insured "has not pleaded a breach of contract claim that can be proven at trial because nothing happened *to the covered property* (*i.e.*, the wine that [the insured] purchased and insured)." *Id.* at 38 (emphasis in original). The policy only insured "against potential harms to the wine itself, such as fire, theft, or abnormal spoilage; [the insured] did not insure himself against any potential financial losses"; rather, he "bought a *property* insurance policy." *Id.* at 39 (emphasis in original).

Similarly, here, nothing happened to the covered property, *i.e.*, Plaintiff's restaurant equipment and supplies, and nothing happened to the building in which Plaintiff operates its restaurant. Nothing was lost, stolen, or damaged. Nothing disappeared. What Plaintiff suffered is a purely *financial* loss that did not result from any *physical* loss of or damage to property and is not covered by the Policy. *See also Ward Gen. Ins. Servs., Inc. v. Employers Fire Ins. Co.*, 114 Cal. App. 4th 548, 556 (2004) (holding that "the loss of [a] database, with its consequent economic loss, but with no loss of or damage to tangible property, was not a 'direct physical loss of or damage to' covered property," and therefore not covered); *Commercial Union Ins. Co. v. Sponholz*, 866 F.2d 1162, 1163 (9th Cir. 1989) (applying California law, agreeing with Washington Court of Appeals that defective title to a vessel was not "physical loss or damage").

Gibson, Dunn & Crutcher LLP

Defendant The Travelers Indemnity Company of Connecticut's Reply in Support of Its Motion to Dismiss the First Amended Complaint

10

2:20-cv-04418-SVW-AS

Courts have consistently held that property insurance policies do not cover purely economic losses caused by a loss of use of property that has not been physically lost or damaged. *See, e.g.*, *Pentair, Inc. v. Am. Guarantee & Liab. Ins. Co.*, 400 F.3d 613, 616 (8th Cir. 2005) (rejecting insured's position because "if adopted, [it] would mean that direct physical loss or damage is established *whenever* property cannot be used for its intended purpose") (emphasis in original); *Ne. Ga. Heart Ctr., P.C. v. Phx. Ins. Co.*, 2014 WL 12480022, at *6 (N.D. Ga. May 23, 2014) ("The court will not expand 'direct physical loss' to include loss-of-use damages when the property has not been physically impacted in some way. To do so would be equivalent to erasing the words 'direct' and 'physical' from the policy."); *J. O. Emmerich & Assocs., Inc. v. State Auto Ins. Cos.*, No. 3:06CV00722-DPJ-JCS, 2007 WL 9775576, at *5 (S.D. Miss. Nov. 19, 2007) (same result); *see also Harry's Cadillac-Pontiac-GMC Truck Co., Inc. v. Motors Ins. Corp.*, 486 S.E.2d 249, 250–51 (N.C. Ct. App. 1997) (inability to access insured car dealership due to snowstorm did not give rise to a covered business income loss).

Consistent with these prior decisions, three recent cases involving COVID-19-related property insurance claims arising from government orders that restrict the use and operation of an insured's business have flatly rejected the argument that the inability to use a business premises due to a government order constitutes "direct physical loss" of insured property. In *Gavrilides Mgmt. Co. v. Michigan Ins. Co.*, Case No. 20-258-CB-C30, tr. at 20:15–18 (Mich. Cir. Ct. July 1, 2020),[5] the court dismissed that argument as "just simply nonsense" and explained that "it comes nowhere close to meeting the requirement that there[] . . . has to be some physical alteration to or physical damage or tangible damage to the integrity of the building." The court

---

[5] The transcript of oral argument on the insurer-defendant's motion for summary disposition in *Gavrilides* is attached as Exhibit 1 to Travelers' Appendix of Supplemental Authorities, filed contemporaneously herewith.

Gibson, Dunn &
Crutcher LLP

Defendant The Travelers Indemnity Company of
Connecticut's Reply in Support of Its Motion to
Dismiss the First Amended Complaint

11

2:20-cv-04418-SVW-AS

1    granted the equivalent of a motion to dismiss on the claim for Business Income

2    coverage.

3         Similarly, on August 6, 2020, the Superior Court for the District of Columbia

4    granted summary judgment for the insurer in *Rose's 1, LLC, et al. v. Erie Insurance*

5    *Company*, Civil Case No. 2020 CA 002424 B (D.C. Super. August 6, 2020).[6] The

6    court held that, even if it accepted the insured's argument that "loss of use" potentially

7    could be covered, "any 'loss of use' must be caused, without the intervention of other

8    persons or conditions, by something pertaining to matter—in other words, a direct

9    physical intrusion on to the insured property[,] [and] Mayor Bowser's orders were not

10   such a direct physical intrusion." *Id.*

11        Likewise, on August 13, 2020, the U.S. District Court for the Western District of

12   Texas granted the insurer's motion to dismiss in *Diesel Barbershop*. The plaintiff

13   there argued that the policies, which covered "accidental direct physical loss,"

14   "include[d] loss of use of the Properties due to the Orders restricting usage of the

15   Properties." *Diesel Barbershop,* 2020 WL 4724305, at *5. Rejecting that argument,

16   the court held that "the loss needs to have been a 'distinct, demonstrable physical

17   alteration of the property.'" *Id.* (quoting *Hartford Ins. Co. of Midwest v. Mississippi*

18   *Valley Gas Co.*, 181 F. App'x 465, 470 (5th Cir. 2006)).

19        The logic and reasoning of *Gavrilides Management*, *Rose's 1*, and *Diesel*

20   *Barbershop* are sound, persuasive, and applicable here. *See also Social Life Magazine,*

21   *Inc. v. Sentinel Ins. Co. Ltd.*, No. 20 Civ. 3311 (VEC) (S.D.N.Y. May 14, 2020

22   transcript) (available at ECF No. 24-1) (explaining that COVID-19 "damages

23   lunches," "[i]t doesn't damage printing presses" or other property, and 'this is just not

24   what's covered under these insurance policies").[7] Accordingly, Plaintiff's claim for

25   _____

26   [6]  A copy of the Court's decision in *Rose's 1* is attached as Exhibit 2 to Travelers'
         Appendix of Supplemental Authorities, filed contemporaneously herewith.

27   [7]  Plaintiff filed a Notice of Supplemental Authority attaching the recent decision in

28   *Studio 417, Inc. v. The Cincinnati Ins. Co.*, Case No. 20-cv-03127-SRB (D. W.D.

Gibson, Dunn &
Crutcher LLP

Defendant The Travelers Indemnity Company of
Connecticut's Reply in Support of Its Motion to
Dismiss the First Amended Complaint

12                                        2:20-cv-04418-SVW-AS

Business Income and Extra Expense coverage should be dismissed on the same grounds.

Plaintiff's heavy reliance on *Total Intermodal Servs. Inc. v. Travelers Prop. Cas. Co. of Am.*, No. CV 17-04908 AB (KSX), 2018 WL 3829767 (C.D. Cal. July 11, 2018) (cited at Opp. at 9, 11), is misplaced. In that case, cargo was lost when a container was mistakenly marked as "empty," and thus mistakenly shipped to China and held by Chinese authorities who refused to release it for months. *Id.* at *1. The insured argued that the property was "in effect lost" because it was "unrecoverable from China." *Id.* at *3. This Court held that "the '*loss of*' property contemplates that the property is **misplaced and unrecoverable**, without regard to whether it was damaged," and that "the phrase 'loss of' includes the **permanent dispossession** of something." *Id.* (italics in original; bold added). That is completely unlike this case, where Plaintiff has not been dispossessed of any of its property. Plaintiff alleges that it was temporarily deprived of the *use* of its "dining room," "bar," and "flatware." Plaintiff does not allege that it was *physically deprived* or *dispossessed* of any of that property, let alone that such deprivation has been *permanent*, as it was in *Total Intermodal*.

---

Mo. Aug. 12, 2020) (ECF Nos. 34, 34-1), denying the insurer's motion to dismiss the plaintiff's claim for business income and other losses related to the Coronavirus. *Studio 417* is contrary to the controlling California appellate decisions cited by Travelers and the strong weight of authority nationwide. Moreover, in *Studio 417*, the court focused heavily on the plaintiff's allegations that their "premises likely have been infected with COVID-19" and "[i]t is likely customers, employees and/or other visitors to the insured premises over the last several months were infected with COIVD-19 and thereby infected the insured properties with COVID-19." (ECF No. 34-1 at 4, 11.) Plaintiff makes no such allegations here and expressly states in its Opposition that the Coronavirus "has never been detected at its property." Opp. at 1. The court found those allegations sufficient to survive a challenge to the sufficiency of the pleading under the Fed. R. Civ. P. 12(b)(6) standard. (ECF No. 34-1 at 11, 12.) Notably, the policy at issue in *Studio 417* also did not contain a virus exclusion, and to the extent the court addressed Civil Authority coverage, it failed to analyze any of the numerous cases nationwide holding that such provisions require a complete prohibition of access.

Gibson, Dunn &
Crutcher LLP

Defendant The Travelers Indemnity Company of
Connecticut's Reply in Support of Its Motion to
Dismiss the First Amended Complaint

13

2:20-cv-04418-SVW-AS

Plaintiff also misreads *Friends of Danny DeVito v. Wolf*, 227 A.3d 872 (Pa. 2020), which addressed emergency statutory and constitutional challenges to Governor Wolf's executive order in Pennsylvania closing "the physical operations of all non-life-sustaining business to reduce the spread of the novel coronavirus disease ('COVID-19')." *Id.* at 876. The Pennsylvania Supreme Court held that the order was authorized by the Pennsylvania Constitution and the Emergency Management Services Code ("Emergency Code"), 35 Pa.C.S. § 7101, *et seq.*, and did not violate the Pennsylvania or United States Constitutions. *DeVito* did not involve the interpretation of any of the policy language at issue in this case (*e.g.*, "direct physical loss of or damage to property"). Moreover, "property damage" was not a requirement for qualification as a "natural disaster" under the applicable state statute. 35 Pa.C.S. § 7102 (defining "natural disaster" as "[a]ny hurricane, tornado, storm, flood, high water, wind-driven water, tidal wave, earthquake, landslide, mudslide, snowstorm, drought, fire, explosion *or other catastrophe which results in substantial damage to property, hardship, suffering **or possible loss of life**.*" (emphasis added)).

Finally, Plaintiff cites several cases on pages 13 and 14 of the Opposition—none of which applied California law—where there was a pervasive, *physical* impact on the insured property that the court concluded constituted or was tantamount to physical loss or damage.[8] As one court summarized this line of cases, they involved

---

[8] These include cases where buildings were affected by pervasive and acrid odors, *Mellin v. No. Sec. Ins. Co., Inc.*, 115 A.3d 799, 805 (N.H. 2015) (cat urine), *Columbiaknit, Inc. v. Affiliated FM Ins. Co.*, No. Civ. 98-434-HU, 1999 WL 619100, at *7 (D. Or. Aug. 4, 1999) (mold and humidity); leaked gasoline saturating the premises, *Western Fire Ins. Co. v. First Presbyterian Church*, 437 P.2d 52 (Colo. 1968) (gas); and harmful fumes or gases, *Port Auth. Of New York & New Jersey v. Affiliated FM Ins. Co.*, 311 F.3d 226, 236 (3d Cir. 2002) (asbestos); *Gregory Packaging, Inc. v. Travelers Prop. Cas. Co. of Am.*, 2014 WL 6675934, at *6 (D.N.J. Nov. 25, 2014) (ammonia), *TRAVCO Ins. Co. v. Ward*, 715 F. Supp. 2d 699, 708–09 (E.D. Va. 2010) (Chinese drywall); *Widder v. Louisiana Citizens Prop. Ins. Corp.*, 2011-0196 (La. App. 4 Cir. 8/10/11), 82 So. 3d 294, 296, *writ denied*, 2011-2336 (La. 12/2/11), 76 So. 3d 1179 (lead).

Gibson, Dunn & Crutcher LLP

Defendant The Travelers Indemnity Company of Connecticut's Reply in Support of Its Motion to Dismiss the First Amended Complaint

14

2:20-cv-04418-SVW-AS

1    circumstances "where the building in question has been rendered unusable *by physical*

2    *forces*." *TRAVCO Ins. Co. v. Ward*, 715 F. Supp. 2d 699, 708 (E.D. Va. 2010)

3    (emphasis added). Here, in contrast, Plaintiff does not allege that a physical force

4    acted upon its restaurant, let alone a physical force rendering Plaintiff's premises

5    completely uninhabitable, as in the cases Plaintiff relies upon. Thus, even assuming

6    the cases Plaintiff cites are consistent with the definition of "direct physical loss of or

7    damage to property" under California law—which they are not—Plaintiff pleads no

8    facts that would bring its loss within the scope of the cases it relies on.[9]

9           **2.**     **Plaintiff Improperly Asks This Court to Deviate from Ordinary**

10                 **Rules of Contract Construction**

11        Plaintiff's position is contrary to the fundamental rule that where "the meaning

12    of the policy term is clear from the context of the policy as a whole, no ambiguity

13    exists," *Palmer v. Truck Ins. Exch.*, 21 Cal. 4th 1109, 1118 (1999), in several respects.

14    *First*, when the Policy covers a Business Income or Extra Expense loss, the time

15    period for such coverage is the "period of restoration," Kupec Decl., Ex. 1 at 121,

16    which ends on "[t]he date when the property at the described premises should be

17    *repaired, rebuilt or replaced* with reasonable speed and similar quality," *id.* at 143

18    (emphasis added). Courts have repeatedly looked to the definition of "period of

19    restoration" in concluding that "direct physical loss of or damage to property" requires

20    repairable or replaceable loss or damage. *See, e.g.*, *Newman Myers Kreines Gross*

21    *Harris, P.C. v. Great N. Ins. Co.*, 17 F. Supp. 3d 323, 332 (S.D.N.Y. 2014) ("The

22    words 'repair' and 'replace' [in the policy's definition of 'period of restoration']

23    contemplate physical damage to the insured premises as opposed to loss of use of

24

25       _____

26    [9]   Plaintiff's Opposition does not even attempt to distinguish most of the cases cited
      by Travelers requiring "a distinct, demonstrable, physical alteration of the property"

27      to implicate coverage for direct physical loss and rejecting similar attempts to
      convert *non*-physical impacts, such as intangible or incorporeal losses—into claims

28      for physical damage. Mot. at 14–16 (cases cited).

Gibson, Dunn &
Crutcher LLP

Defendant The Travelers Indemnity Company of
Connecticut's Reply in Support of Its Motion to
Dismiss the First Amended Complaint

15

2:20-cv-04418-SVW-AS

it").[10]  Where there is physical loss (such as a theft), the item can be replaced.  Here, Plaintiff's claimed loss cannot be "repaired, rebuilt or replaced."  Rather, what needs to happen for its loss to end is not for any repairs or replacement to be made, but merely for government officials to declare that "social distancing" is no longer necessary to the same extent and allow on-premises dining at Plaintiff's restaurant.

*Second*, the Policy, when read as a whole, makes clear that a bare loss of use unaccompanied by any physical loss or damage is not covered because the Policy contains an express exclusion for a bare loss of use, stating that "[w]e will not pay for loss or damage caused by or resulting from . . . loss of use or loss of market."  Kupec Decl., Ex. 1 at 130; *see, e.g.*, *Schneider Equip., Inc. v. Travelers Indem. Co. of Ill.*, No. CIV. 04-1482-HA, 2006 WL 2850465, at *1, *5–6 (D. Or. Sept. 29, 2006) (where well could not produce anticipated volume of water and was determined to be unusable as a result of a damaged screen, court held that loss of use exclusion, among other exclusions, applied).[11]

*Finally*, Plaintiff's position would render the Civil Authority provision meaningless.  If, as Plaintiff contends, a governmental order requiring closure of the insured premises to the public were to constitute "direct physical loss of or damage to property at [the insured] premises," the Civil Authority provision, which is an "Additional Coverage" that extends the scope of the Business Income and Extra Expense coverages, would serve no purpose.  If Plaintiff's position were adopted, any "action of civil authority that prohibits access to the described premises" within the meaning of the Civil Authority provision (Kupec Decl., Ex. 1 at 121) would constitute

---

[10]  *See also Phila. Parking Auth. v. Fed. Ins. Co.*, 385 F. Supp. 2d 280, 287 (S.D.N.Y. 2005) ("'Rebuild,' 'repair' and 'replace' all strongly suggest that the damage contemplated by the Policy is physical in nature."); *Harry's Cadillac*, 486 S.E.2d at 251 (reaching same conclusion); *Roundabout Theatre Co. v. Cont'l Cas. Co.*, 751 N.Y.S.2d 4, 8 (N.Y. App. Div. 2002) (reaching similar conclusion).

[11]  Of course, when a covered cause of loss, such as a fire, results in physical loss of or damage to property and that causes a suspension of operations, the "loss of use" exclusion does not apply because the cause of the loss is the fire.

16                    2:20-cv-04418-SVW-AS

"direct physical loss of or damage to property at the described premises," thereby triggering the Business Income and Extra Expense coverages.  Thus, there would be no reason for the Policy to include the "Additional Coverage" for Civil Authority, which is limited to a maximum period of three consecutive weeks (as opposed to Business Income coverage, which has a maximum time period of one year).  The Policy cannot be interpreted in a manner that renders the Civil Authority coverage subsumed by the Business Income and Extra Expense coverages.  *See Titan Corp. v. Aetna Cas. & Sur. Co.,* 22 Cal. App. 4th 457, 473–74 (1994) ("We interpret contracts (including insurance policies) as a whole, with each clause lending meaning to the others," and "in a manner which gives force and effect to every clause rather than to one which renders clauses nugatory."); *see also* Cal. Civ. Code § 1641 ("The whole of a contract is to be taken together, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the other.").

C.      **Dismissal of the First Cause of Action Is Proper Because Plaintiff Is Not Entitled to Coverage as a Matter of Law**

As alleged in its FAC and argued in its Opposition, Plaintiff has not demonstrated that it is entitled to coverage under the Policy's Civil Authority or Business Income and Extra Expense provisions as a matter of law.  Accordingly, Plaintiff is not entitled to any of the declarations it seeks, and thus its First Cause of Action must be dismissed.  *See* Opp. at 14 (admitting declarations are derivative of coverage determination).

D.      **Dismissal of the Second Cause of Action Is Proper Because Plaintiff Is Not Entitled to Coverage as a Matter of Law**

As alleged in its FAC and argued in its Opposition, Plaintiff cannot demonstrate, under the Policy's clear terms, either "benefits due" or "actual withholding."  *Love v. Fire Ins. Exch.*, 221 Cal. App. 3d 1136, 1151 n.10 (1990).  There thus "is no breach of contract," and so Plaintiff's Second Cause of Action must be dismissed.  *Id.*

Gibson, Dunn & Crutcher LLP

Defendant The Travelers Indemnity Company of Connecticut's Reply in Support of Its Motion to Dismiss the First Amended Complaint

17

2:20-cv-04418-SVW-AS

**E.      Dismissal of the Third Cause of Action Is Proper Because Plaintiff Is Not Entitled to Coverage as a Matter of Law**

As alleged in its FAC, Plaintiff is not entitled to any coverage under its Policy as a matter of law, and thus its Third Cause of Action for bad faith breach of the covenant of good faith and fair dealing must be dismissed. *See Love*, 221 Cal. App. 3d at 1152; *Waller v. Truck Ins. Exch., Inc.*, 11 Cal. 4th 1, 35 (1995). Plaintiff's Opposition fails to raise any argument in defense of the viability of this claim or to rebut Travelers' argument that it should be dismissed warrants dismissal.

**F.      Dismissal of the Fourth Cause of Action Is Proper Because Plaintiff Pleads No Fraudulent, Unfair, or Unlawful Conduct**

Because all of its other causes of action fail as a matter of law, Plaintiff's UCL claim—expressly "based on" those underlying claims (FAC ¶ 51)—must also be dismissed. *See* Mot. at 19 (citing cases). In any event, Plaintiff's Opposition fails to raise any argument in defense of this claim or to rebut Travelers' argument that Plaintiff has not separately pleaded any "fraudulent," "unfair," or "unlawful" business practices. *See* Cal. Bus. & Prof. Code § 17200. Accordingly, the claim must be dismissed. *See Personal Elec. Transps., Inc. v. Office of U.S. Tr.*, 313 F. App'x 51, 52 (9th Cir. 2009) (affirming district court's holding that a party waived an argument by failing to raise it in its opposition to a motion to dismiss); *Grossman v. Valverde*, No. SACV 13-461-DDP CW, 2014 WL 722035 at *4 (C.D. Cal. Feb. 20, 2014) (holding that because plaintiff failed to respond "on this issue in his opposition, it does not appear that he can successfully amend his complaint to state a [claim] . . . and granting leave to amend in this respect would be futile"); *Silva v. U.S. Bancorp*, No. 5:10-01854, 2011 WL 7096576, at *3 (C.D. Cal. Oct. 6, 2011) ("[T]he Court finds that Plaintiff concedes his . . . claim should be dismissed by failing to address Defendants' arguments in his Opposition.").

Gibson, Dunn & Crutcher LLP

Defendant The Travelers Indemnity Company of Connecticut's Reply in Support of Its Motion to Dismiss the First Amended Complaint

18

2:20-cv-04418-SVW-AS

## III.   CONCLUSION

For all of the reasons stated above and in Travelers' Motion, the FAC fails to state a claim upon which relief must be granted.  Further amendment would be futile.  Plaintiff has already amended once, and although Plaintiff *could have* stated additional facts in its Opposition to warrant further amendment, *see Broam v. Bogan*, 320 F.3d 1023, 1026 n.2 (9th Cir. 2003), it failed to do so.  Thus, the Court should dismiss the FAC with prejudice.  *See Gardner*, 563 F.3d at 990 (no abuse of discretion in denying leave to amend when amendment would be futile); *Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1058 (9th Cir. 2011) ("discretion to deny leave to amend is particularly broad where plaintiff has previously amended the complaint" (citation omitted)); *see also, e.g.*, *Torres*, 2016 WL 10988576, at *2 (dismissing case with prejudice when plaintiff "failed to allege any facts in his Opposition that indicate[d] leave to amend would not be futile"); *Banner v. CFM Corp.*, No. CV 09-7525 PA (AJWx), 2010 WL 11597350, at *3 (C.D. Cal. May 3, 2010) (dismissing first amended complaint when plaintiffs "failed to offer any facts or argument in their Opposition that would indicate that they have a basis to amend").

Dated:  August 17, 2020

GIBSON, DUNN & CRUTCHER LLP

By:   */s/ Richard J. Doren*
Richard J. Doren, SBN 124666
   rdoren@gibsondunn.com
Theodore J. Boutrous Jr., SBN 132099
   tboutrous@gibsondunn.com
Deborah L. Stein, SBN 224570
   dstein@gibsondunn.com
333 South Grand Avenue
Los Angeles, CA 90071-3197
Tel.: 213.229.7000
Fac.: 213.229.7520

Of Counsel:

ROBINSON & COLE LLP
Stephen E. Goldman (admitted *pro hac vice*)
   sgoldman@rc.com

Gibson, Dunn & Crutcher LLP

Defendant The Travelers Indemnity Company of Connecticut's Reply in Support of Its Motion to Dismiss the First Amended Complaint

19

2:20-cv-04418-SVW-AS

Case 2:20-cv-04418-SVW-AS   Document 36   Filed 08/17/20   Page 26 of 26   Page ID #:1066

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Wystan M. Ackerman (admitted *pro hac vice*)
   wackerman@rc.com
280 Trumbull Street
Hartford, CT 06103
Tel.: 860.275.8200
Fac.: 860.275.8299

*Attorneys for Defendant The Travelers*
*Indemnity Company of Connecticut*

Gibson, Dunn &
Crutcher LLP

Defendant The Travelers Indemnity Company of
Connecticut's Reply in Support of Its Motion to
Dismiss the First Amended Complaint

20

2:20-cv-04418-SVW-AS